Jeffrey W. Leppo (Bar No. 0001003)
Ryan P. Steen (Bar No. 0912084)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
jeffrey.leppo@stoel.com
ryan.steen@stoel.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHELL OFFSHORE INC., a Delaware corporation, and SHELL GULF OF MEXICO INC., a Delaware corporation,<br><br>                         Plaintiffs,<br><br>v.<br><br>GREENPEACE, INC., a California corporation, and JOHN and JANE DOES 1-20,<br><br>                        Defendants. | Case No.: 3:15-cv-00054 HRH<br><br>VERIFIED COMPLAINT |

## I.    NATURE OF THE CASE

1.    Shell Offshore Inc. ("SOI") and Shell Gulf of Mexico Inc. ("SGMI") (collectively "Shell") file this complaint urgently seeking the Court's protection from defendant Greenpeace Inc. (also known as "Greenpeace USA"), and individuals and entities affiliated with and acting in concert with it (collectively "Greenpeace"), because of their existing dangerous and unlawful interference with, and the ongoing imminent threat of continuing and additional interference with and irreparable harm to, Shell's 2015 Arctic exploration drilling program and support vessels. Shell seeks the immediate intervention of this Court to protect Shell's vessels and related Arctic assets from unlawful and unsafe interference by Greenpeace while they are in transit to the

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054 HRH* Page 1 of 31

Case 3:15-cv-00054-SLG   Document 1   Filed 04/07/15   Page 1 of 31

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900  Fax (206) 386-7500*

Pacific Northwest, while in port in the Pacific Northwest, during transit to Alaska, and while conducting drilling operations in offshore Alaska.

2.     The Greenpeace vessel *Esperanza*, — in Greenpeace's own words — has been "stalking" and "chasing" Shell's Artic drilling vessel the *Polar Pioneer* and its heavy transport vessel, the *Blue Marlin,* across the Pacific.   Greenpeace made no secret of its actions or intentions.  It developed a dedicated website (dubbed "The Crossing") chronicling the actions of six "brave" activists on the *Esperanza* (including professional and experienced climbers) who were preparing to do something "extraordinary."  On April 6, 2015, six members of the crew of the *Esperanza*, including Greenpeace USA's representative, member and employee, Aliyah Field, willfully, recklessly and illegally, and demonstrating a callous disregard for the rights and safety of themselves and of others, boarded the *Blue Marlin* on the high seas approximately 750 miles northwest of Hawaii, and thereafter scaled and now illegally occupy the *Polar Pioneer*. The *Blue Marlin* loaded with the *Polar Pioneer*, along with a second essential vessel, the drillship *Noble Discoverer*, are en route to and rapidly approaching ports in Washington where the drilling vessels will make final preparations for the 2015 Arctic exploration season.

3.     Shell seeks urgent temporary, preliminary and permanent injunctive and other relief to prevent Greenpeace USA, and individuals and entities affiliated with and acting in concert with Greenpeace USA from continuing and further committing federal statutory and common law, maritime, and state common law violations.  The actual and threatened actions of Greenpeace USA and those acting in concert with it are in furtherance of a carefully staged direct action campaign of illegal and extremely unsafe activities directed against Shell for the purpose of unlawfully preventing, or otherwise unlawfully disrupting, delaying, and interfering with, oil

and gas exploration drilling in the United States Outer Continental Shelf ("OCS") of the Chukchi Sea adjacent to Alaska's northwestern coast.

4.    This lawsuit is targeted solely at actual and threatened tortious and illegal conduct by Greenpeace USA and those acting in concert with it. Greenpeace has a demonstrated pattern conducting direct actions against Arctic oil and gas operations that violate the rights of others and create dangerous situations for their targets, law enforcement, and their own members. Shell recognizes Greenpeace's right to oppose offshore drilling in Alaska, to petition the government to redress its concerns, and to express their views in a lawful manner. Greenpeace's advocacy rights, however, do not include license to commit torts or crimes against Shell, its property and its employees and contractors, or the right to pursue policy objectives by putting people, property and the environment, at risk of grave harm.

5.    Left unsanctioned, Greenpeace USA's illegal and tortious actions will, as Greenpeace USA intends, delay and/or prevent Shell from transporting vessels, facilities, supplies, and personnel to the Chukchi Sea, and from conducting federally permitted exploration drilling activities on Shell-owned United States OCS oil and gas leases, during the brief 2015 open water season in the Arctic Ocean. Moreover, Greenpeace USA will, as Greenpeace USA intends, otherwise severely impair and endanger Shell's vessels, facilities, property, and personnel, trespass and impair Shell's right to navigate and conduct commerce within U.S. territorial waters, the U.S. Exclusive Economic Zone ("EEZ") and on the high seas, including waters over Shell's United States OCS leases. If not immediately enjoined, the antics of Greenpeace USA and those affiliated with and acting in concert with it, will, as intended, cause Shell irreparable harm, as well as additional monetary damages.

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*  Page 3 of 31
Case 3:15-cv-00054-SLG   Document 1   Filed 04/07/15   Page 3 of 31

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900    Fax (206) 386-7500

6.     This is the second time the tortious actions of Greenpeace USA have required Shell to seek injunctive relief in this Court. In 2012, Shell was forced to file a similar lawsuit against Greenpeace USA to protect Shell's planned OCS Arctic 2012 exploration drilling operations, including the associated vessels, facilities, and personnel, and Shell's other assets from tortious and illegal conduct and threats by Greenpeace.[1] The Court in that case granted Shell a temporary restraining order and a preliminary injunction, after Greenpeace activists boarded the *Noble Discoverer* in New Zealand, boarded the *Nordica* and *Fennica* in Finland, and threatened to commit similar torts to "Stop Shell" in the Arctic. Notwithstanding threats from Greenpeace International's Executive Director Kumi Naidoo that Greenpeace was moving to a "war footing" and that he was ready to "die for the cause," and statements from Greenpeace USA leader Jackie Dragon that "[w]e know there is an injunction in place, but we will act according to what we think is in the best interests of the planet," the U.S. Court of Appeals for the Ninth Circuit affirmed the Court's grant of a preliminary injunction.[2]

## II.     PARTIES

7.     SOI and SGMI are Delaware corporations operating in Alaska.

8.     Greenpeace USA is a non-profit California corporation having its principal place of business in the District of Columbia with an office in Juneau, Alaska. Greenpeace USA has been active in Alaska since the 1970s. It is registered in Alaska as a non-profit corporation. It has been and is currently an active and voluntary litigant before this Court.

9.     Part of Greenpeace USA's mission as an organization is to engage in global direct action campaigns pertaining to environmental issues, and to confront and to stop otherwise

---

[1] *See Shell v. Greenpeace, Inc.*, et al., 3:12-cv-00042-SLG.
[2] *Shell v. Greenpeace, Inc.*, 709 F.3d 1281 (9th Cir. 2012).

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*   Page 4 of 31

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

lawful commercial and governmental activities with which it disagrees. The term "direct action" as used by Greenpeace, USA includes illegal activities. One of Greenpeace USA's "core principles," which guide its actions, is to be "confrontational."

10. Greenpeace USA is part of a larger "One Greenpeace" framework, consisting of Greenpeace International in Amsterdam, Netherlands, and Greenpeace offices in over 40 countries across Europe, the Americas, Asia, Africa, and the Pacific. Greenpeace USA collaborates and coordinates with Greenpeace International and the other Greenpeace national offices on global campaigns such as its ongoing "Save the Arctic" campaign.

11. Greenpeace USA controls all Greenpeace operations occurring in the United States and no Greenpeace operations are to occur in the United States without Greenpeace USA's consent.

12. Greenpeace USA is responsible for the actions of its employees, agents, and contractors, as well as any other entity, including Greenpeace International or other Greenpeace national offices, that is working in concert or cooperation with Greenpeace USA for the purposes of carrying out tortious or illegal acts to stop, prevent, blockade, delay, or otherwise disrupt transportation of Shell vessels to the Arctic and exploration activities by Shell in the Arctic Ocean on United States OCS leases during the 2015 open water season.

13. John and Jane Does 1-20 are individuals, whose identities are uncertain at this time. On information and belief, John and Jane Does 1-20, acting in concert and participation with Greenpeace USA, to support, assist, or participate in Greenpeace's tortious and illegal acts in U.S. port facilities, to blockade and otherwise disrupt transport of the *Noble Discoverer* and the *Polar Pioneer* and other support vessels to the Arctic, and to stop, prevent, blockade, delay,

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900    Fax (206) 386-7500

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*   Page 5 of 31

or otherwise disrupt conduct of exploration activities by Shell in the Arctic Ocean on United States OCS leases during the 2015 open water season.

### III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1333, because, among other grounds, Shell's causes of action are based on questions of federal law and include tort and other claims, including interference (i) with marine traffic on navigable waters, and (ii) with facilities engaged or preparing to engage in OCS activities, all of which bear a substantial relationship to traditional marine activity. Additionally, this Court has original subject matter jurisdiction pursuant to 43 U.S.C. § 1349(b)(1) which provides the district courts of the United States with jurisdiction over cases and controversies arising out of or in connection with any operations involving exploration, development, or production of the subsoil or the seabed of the OCS.

15. In addition, this Court has jurisdiction under 28 U.S.C. § 1332 because of diversity of citizenship between plaintiffs and defendants, and because the matters in controversy exceed the sum or value of $75,000, exclusive of interest and costs.

16. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391.

### IV. GENERAL ALLEGATIONS

17. Shell owns interests in certain United States OCS oil and gas leases, including leases located in the Chukchi Sea.

18. Following the close of the 2012 summer work season in the Arctic, the Court granted Shell's request to voluntarily dismiss the 2012 litigation without prejudice. Shell sought such relief because it appeared likely, as events have since confirmed, that it would be some considerable time before Shell resumed Arctic exploration drilling operations offshore of Alaska.

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*   Page 6 of 31
Case 3:15-cv-00054-SLG   Document 1   Filed 04/07/15   Page 6 of 31

19. On or about January 29, 2015, Shell announced its intent to resume Arctic exploration drilling in the Chukchi Sea on its United States OCS leases in the summer of 2015.

20. During the 2015 open water season in the Arctic Ocean, Shell intends to conduct exploration activities, including exploration drilling, at isolated locations approximately 75 miles offshore of Alaska in the Chukchi Sea above and on its United States OCS leases. The drilling vessels that will be used for the 2015 exploration drilling in the Arctic Ocean are the *Noble Discoverer* and the *Polar Pioneer*. Both vessels are under contract to Shell.

21. Shell has already begun the process of mobilizing vessels for this season. The *Noble Discoverer* and the *Polar Pioneer* left Malaysia in early March of 2015. *Noble Discoverer* is traveling under its own power, while the *Polar Pioneer* is being transported from Malaysia aboard the heavy lift vessel *Blue Marlin*. Both vessels are destined for ports in Washington to make final preparations for the drilling season and will ultimately transit to Alaska sometime in May or June. The *Polar Pioneer* will be towed to the Chukchi Sea by the ocean-going tugs *Ocean Wind* and *Ocean Wave*.

22. In order to conduct drilling operations in the Arctic Ocean in 2015, the *Noble Discoverer* and the *Polar Pioneer* will each be attended by numerous vessels and aircraft. These vessels will be used for ice management, anchor handling, oil spill response, refueling, resupply, and servicing of the drilling operations. The majority of these vessels have lengths greater than 30.5 meters and drafts of at least four meters. The support vessels include the following: *Nordica*, *Fennica*, *Arctic Challenger*, *Corbin Foss*, *Aiviq*, *Lauren Foss*, *Tuuq*, *Ross Chouest*, *Harvey Champion*, *Harvey Supporter*, *Ocean Wind*, *Ocean Wave*, *Harvey Sisuaq*, *Harvey Explorer*, *American Trader*, *Nanuq*, *Barbara Foss*, *Tor Viking II*, *Guardsman*, *Sea Prince*, *Montana*, *Klamath*, *Arctic Endeavour*, *Unalaq*, *Benjamin Foss*, *King C*, *Marika*, and an

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900  Fax (206) 386-7500*

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH* Page 7 of 31
Case 3:15-cv-00054-SLG  Document 1  Filed 04/07/15  Page 7 of 31

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900    Fax (206) 386-7500

additional yet-to-be-named resupply tanker.  Other specific vessels, including a tanker and two resupply landing craft, are yet to be determined.  Several helicopters and fixed wing aircraft operating from Barrow, Alaska will provide search and rescue, resupply, crew change, and marine mammal observation support for the *Noble Discoverer* and the *Polar Pioneer* and the other support vessels.  The vessels and aircraft supporting the drilling operations of the *Noble Discoverer* and the *Polar Pioneer* are each contracted to Shell and must transit on a specific schedule from the Pacific Northwest and other locations to the Arctic Ocean.

23.     The close presence of vessels, aircraft such as drones or helicopters, and individuals with uncertain and unpredictable motives and intentions, to drilling vessels and support vessels in transit or while operating at a drilling location, presents unacceptable and irreparable risks to safety, property, and the environment.  Tactics used by Greenpeace such as blockading vessels in transit, blocking access to vessels attempting to dock at port, boarding vessels, placing swimmers in the water in front of vessels, hanging climbers on the sides of vessels, hanging survival pods on vessels, attempting to foul propulsion systems and chaining of individuals to anchors, vessels, or other facilities, create unsafe and hazardous conditions and increase the risks of collisions or allisions, injuries to personnel, damage to essential facilities and equipment, and harm to the environment from a catastrophic event.

24.     These concerns are present while the vessels are in port and during transit, but are even more prevalent in the Arctic where conditions are dynamic and in-water survival times are very short.  Experience with ice floes in 2012 illustrates why it is important for the vessels to be unimpeded when conducting drilling operations.  Shell's plans provide that if an ice floe comes within a specific distance, then the drilling vessel will disconnect from the well and move off the

drilling site until the floe passes through the area. Any action by Greenpeace to impede that kind of movement could have catastrophic results.

25. The ability to conduct exploration drilling in the Chukchi Sea is very seriously constrained in time period and duration to a brief portion of the Arctic open water season (generally July to October) during which operations will not present an undue risk as a result of ice conditions and weather. Impeding, blockading, or otherwise delaying Shell's 2015 exploration drilling operations, or forcing Shell to cease operations for some period of time, would have a series of irreparable impacts on the interrelated web of agreements and permits among Shell and numerous contractors, suppliers, numerous federal agencies, and Native organizations. Greenpeace is well aware that even short delays in the Arctic can stop exploration for the season, and has used that tactic successfully against other companies.

26. The 2015 exploration drilling plans have required an enormous and costly effort, involving coordination of numerous approvals from federal agencies, study and accommodation of Native rights and concerns, and coordination and mobilization of numerous necessary and interrelated contract services to construct, transport, supply, fuel, and ultimately operate the drilling and support vessels in their remote locations. Because of the complexity of the numerous interrelated permitting, logistical and operational activities, and contractual services, and the limitations imposed by navigational, weather, and ice conditions, a delay of even a single day imposes significant costs on Shell and presents the very real risk that Shell will not be able to complete its 2015 exploration drilling program.

27. Greenpeace has a pattern and practice of tortious and illegal actions (which it calls "direct action"), and publicly touts its ongoing and future intention to continue engaging in such conduct. Greenpeace has blockaded vessels, blocked passage of vessels, trespassed on vessels,

**STOEL RIVES** LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*

vandalized property, chained individual protesters to rigs of drilling vessel equipment and support vessels, placed swimmers in the path of moving vehicles, attempted to foul vessel propulsion systems, and unlawfully boarded and occupied drilling rigs. Greenpeace and/or its members in pursuit of these illegal actions have been found guilty of numerous unlawful acts including trespass and piracy, and have been subject to civil injunctions issued by the courts of several different countries.

28. Greenpeace's prior illegal direct actions against Shell's Arctic exploration activities are now well documented:

a. In May of 2010, seven members of Greenpeace unlawfully boarded the *Harvey Explorer* in the Gulf of Mexico -- a vessel under contract with Shell for use in Arctic exploration in the summer of 2010. Greenpeace vandalized that vessel as a consequence of which all seven Greenpeace members were reportedly arrested and charged with felonies.

b. In 2012, when Shell again announced its intent to conduct Arctic exploration activities, Greenpeace resumed its tortious activities against Shell under the name of the "Stop Shell" campaign. Greenpeace made numerous public threats that it intended to stop Shell from conducting oil and gas exploration activities in the Arctic Ocean in 2012, and that it would not cease its actions against Shell until Shell agreed to stay out of the Arctic. Greenpeace's Stop Shell campaign is multi-faceted, and includes, but is not limited to, direct actions taken by activists against corporate offices, and refining assets and retail outlets; targeting Shell's business partners; developing fake Shell websites and promotional events; organizing protests in general; initiating letter and

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

email campaigns to Shell officials and political figures; and participating in a barrage of legal challenges to the permits and approvals related to Arctic drilling.

c. In furtherance of its direct action campaign against Shell, on or about February 23, 2012, Greenpeace unlawfully boarded and occupied the *Noble Discoverer* for the express purpose of preventing or delaying its transit from New Zealand to the Arctic so that Shell could not engage in exploration drilling in the Arctic Ocean on its United States OCS leases. Six Greenpeace members were arrested and charged with burglary; the charges were later reduced to unlawful boarding and occupying the vessel.

d. Greenpeace then continued those illegal activities against two additional vessels under contract to Shell, the *Nordica* and the *Fennica*, by (1) boarding and occupying the icebreakers *Nordica* and *Fennica* at port in Finland on March 16, 2012; (2) boarding and barricading themselves on the *Nordica* again on May 1, 2012, attempting to disable its propulsion system, and placing swimmers in the water in front of the intended path of the vessel; (3) and dangerously pursuing the *Nordica* and recklessly boarding it while traveling in open water on May 3, 2012; and (4) placing swimmers in front of the *Nordica* while underway on May 4, 2012. Numerous Greenpeace members were arrested related to these events.

29. Greenpeace's 2012 direct action campaign against Shell was ultimately halted when this Court issued a preliminary injunction against Greenpeace.

30. Greenpeace's pattern of tortious and illegal activity against Arctic exploration activities is not limited to actions against Shell and includes a long history of such practices against any entity engaged in Arctic exploration and development. These exploits, detailed below, include illegal and tortious actions conducted against Cairn Energy, Gazprom, Statoil,

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*

ExxonMobil, and others, using the Greenpeace vessels *Arctic Sunrise*, *Esperanza*, *Rainbow Warrior* and *Beluga*:

a. In August of 2010, Greenpeace took direct action against the UK's Cairn Energy as part of its offshore exploration in Greenland. Launching from the Greenpeace vessel *Esperanza*, Greenpeace's small craft dangerously evaded a security line, and four Greenpeace climbers boarded the *Stella Don* drillship. After halting operations on the drillship for 48 hours by attaching themselves to the underside of the *Stella Don*, the Greenpeace climbers had to be rescued by Greenland police after the weather turned dangerous. The four climbers were reportedly arrested by Greenland police for breaching the 500 meter safety zone and for trespass.

b. In April of 2011, Greenpeace again launched a direct action campaign against Cairn Energy. Eleven climbers boarded the drill rig *Leiv Eiriksson* and asked the vessel to stop. They unfurled a banner on the drill rig and occupied a gangway for 12 hours until forced to retreat by a gale.

c. On May 29, 2011, Greenpeace continued its campaign against Cairn Energy. Using the *Esperanza* as their launching point, two Greenpeace members attached and hung in a survival pod next to the drill bit on the Cairn vessel the *Leiv Eiricksson*. After four days in the pod, Danish Marines had to be sent into to remove and arrest the Greenpeace trespassers. As a result of that event, Cairn Energy secured an injunction against Greenpeace, which included a penalty of 50,000 euros a day (up to 1 million euros) if Greenpeace violated the injunction. Greenpeace immediately violated that injunction in June of 2011, when two members (including Executive Director of Greenpeace International, Kumi

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900    Fax (206) 386-7500

Naidoo) again boarded the *Leiv Eiriksson*.  Those Greenpeace members were removed and arrested.

d.  In the summer of 2012, when this Court's injunction prevented Greenpeace from continuing direct action against Shell in Alaska, Greenpeace turned its direct action campaign to the Russian Arctic.   On August 24, 2012, using the Greenpeace vessel *Arctic Sunrise* as a launching point, six Greenpeace climbers, (including Executive Director of Greenpeace International, Kumi Naidoo) boarded the *Prirazlomnaya* Arctic oil platform operated by Gazprom.   On August 27, 2012, Greenpeace mounted another action from the *Arctic Sunrise*. Greenpeace used two high speed rigid inflatable boats to intercept the *Anna Akhmatova*, a passenger vessel carrying workers to the *Prirazlomnaya*. Greenpeace members chained their inflatable boat to the *Anna Akhmatova's* anchor chain, preventing the vessel from lifting anchor.  Gazprom responded with water cannons and ultimately forced Greenpeace to disengage by flipping the inflatable boat upside down, and dumping Greenpeace activists into the Arctic waters.

e.  On April 10, 2013, three Greenpeace activists dressed as polar bears illegally boarded the West Hercules oil rig, operated by Statoil, in Olen Port, Norway.  The activists had to be escorted away by Statoil personnel.

f.  Greenpeace continued its illegal and tortious campaign against Gazprom in September 2013, again using the *Arctic Sunrise* as a platform for direct action. This time, things became even more dangerous.  Greenpeace used rigid inflatable boats to approach the *Prirazlomnaya* and sent two climbers to scale the rig.  The

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*  Page 13 of 31

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

Russian Coast Guard responded, sending their own inflatable boats and Coast Guard sailors tried to dislodge the climbers who were under heavy spray from water cannons. The Greenpeace small vessels refused to obey commands of the Russian Coast Guard to disengage, and the Russian and Greenpeace vessels collided a number of times as they maneuvered around the climbers. On a number of occasions, the Russian Coast Guard fired live ammunition from machine guns at the Greenpeace boats in an effort to gain compliance.

g.  On September 19, 2013, after the climbers were captured on the *Prirazlomnaya*, the *Arctic Sunrise* attempted to flee the area, with American Captain Peter Willcox refusing orders from the Russian Coast Guard to halt and ignoring repeated warning shots fired from Coast Guard cannons. Armed Russian security forces had to forcibly board the fleeing *Artic Sunrise* by helicopter. The Arctic Sunrise was towed to the Russian Port of Murmansk. Thirty people on board were arrested, including the American Captain Peter Willcox, and were charged with piracy, and then hooliganism.

h.  In March of 2014, an international group of Greenpeace activists (including at least one U.S. citizen) boarded and occupied ExxonMobil's *West Alpha* oil rig to protest planned use of the rig to explore in the Kara Sea.

i.  Greenpeace continued its illegal activities against Gazprom in May of 2014, this time using the Greenpeace vessel *Rainbow Warrior*, along with several smaller boats and a paraglider, in an effort to stop the Russian oil tanker *Mikhail Ulyanov* from docking at Rotterdam port. The *Mikhail Ulyanov* was carrying oil from Arctic drilling. Greenpeace used the *Rainbow Warrior* and several inflatable

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*   Page 14 of 31

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

boats to block access to the dock.  The Master of the *Mikhail Ulyanov,* Stanislav Chichin, described the reckless nature of Greenpeace's actions: "[t]he actions of Greenpeace break the fundamental principles of international conventions for safety at sea as well as environmental safety."   As the *Mikhail Ulyanov* was attempting to moor up to the dock, "the Greenpeace vessel Rainbow Warrior deliberately tried to prevent the safe mooring of the vessel, putting herself between the hull of the tanker and the berth, risking their people and of the port." American Captain Peter Willcox was again among the Greenpeace members involved in this incident.   Armed Dutch anti-terror police had to board the *Rainbow Warrior*, secure the vessel, and tow it outside the port.

j.   In May of 2014, Greenpeace continued its actions against Gazprom, occupying the *Saturn* drilling platform while it sat in the Imjuiden seaport.  Greenpeace used divers to chain the substructure of the rig so it could not depart.  Six activists were arrested.

k.   In May of 2014, Greenpeace used the *Esperanza* to board a Statoil drilling rig (*Transocean Spitsbergen*) on the high seas north of Norway, en-route to an Arctic drilling site.  Greenpeace members again attached themselves to the underside of the vessel.  Norwegian police ultimately had to arrest the Greenpeace members. Greenpeace continued to follow the drill rig in the *Esperanza*, and then tried to prevent drilling by occupying the drilling site (and violating the established safety zone).  The Norwegian Coast Guard ultimately had to board and take control of the *Esperanza* and tow it out of the drilling area.   Greenpeace succeeded in

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*   Page 15 of 31

delaying Statoil operations by almost four days. The cost to Statoil was reported at an estimated $1.26 million per day.[3]

31.     Shell is the only entity that will be conducting Arctic oil and gas exploration in the summer of 2015.

32.     Greenpeace USA and those acting in concert with it are continuing the same pattern of tortious and illegal activity against Shell in 2015. Greenpeace USA and those acting in concert with it again intend to disrupt, delay, and, if possible, prevent Shell from conducting exploration drilling in the Arctic Ocean OCS in 2015 by committing on-the-water or nearshore acts of trespass and nuisance; by intentionally endangering the safety of vessels, drilling facilities, aircraft and personnel while in port or while navigating in territorial waters, waters of the EEZ, and on the high seas; and by otherwise impairing Shell's right and ability to navigate and to conduct commerce and exploration within and on the OCS and on the high seas free from tortious and criminal conduct.

33.     Greenpeace USA is financially supporting, endorsing, and participating in the 2015 global campaign to stop or interfere with Shell's ability to explore for oil and gas in the Arctic in 2015, including direct actions against Shell owned or controlled vessels in 2015. Greenpeace USA's Executive Director Anne Leonard has expressly identified Shell as the target of its Save the Arctic campaign, and stated as part of its 2015 Arctic Campaign kickoff that Greenpeace USA will do "everything that we can do to stop that drilling from happening this summer." She further acknowledged that Greenpeace USA is actively working with the other Greenpeace offices will "work together towards one big global goal" to stop Shell's drilling

---

[3] *See* http://www.reuters.com/article/2014/05/30/us-statoil-arctic-greenpeace-idUSKBN0EA1IS20140530.

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

plans: "Greenpeace all around the world have agreed that stopping drilling in the Arctic and protecting the Arctic is a priority."

34.     Greenpeace USA has publically threatened that it will do some "special things" with ships and Greenpeace has outfitted the *Arctic Sunrise* this winter to "face another Arctic Campaign this year."   Greenpeace USA Executive Director Leonard clearly reaffirmed that unlike many other environmental groups that may voice their political opposition through lawful means, Greenpeace is willing to do more: "Greenpeace can bring some special things to the table . . . we have ships . . . we have ships and you can do special things with ships when comes to protecting the ocean and I'll leave it at that . . . ."

35.     To further its threat, Greenpeace USA is hiring an "Arctic Campaign Director" to carry out the "goals identified in Greenpeace's Global Campaign Strategy," and to ensure successful "direct action [by Greenpeace USA] as a campaign tactic."

36.     Greenpeace has expressed an intent to (again) impede the transit of the support vessels *Nordica* and *Fennica* from  Finland to the United States in support of Shells' 2015 Arctic exploration program.

37.     On or around March 12, 2015, Greenpeace USA (and other Greenpeace offices) announced that they were "searching the globe for a bold group of people to do something extraordinary with us very soon."  Greenpeace provided a quiz to identify potential recruits that might be willing to "climb an anchor chain through a water cannon blast" in order to "stop an oil rig from drilling in pristine waters."

38.     On that same day, Greenpeace USA (and other Greenpeace offices) sent messages out explaining that "six brave people — people like you — are on their way to a secret location,

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*   Page 17 of 31
Case 3:15-cv-00054-SLG   Document 1   Filed 04/07/15   Page 17 of 31

ready to do something that requires real courage." That message solicited support and funding to help their "secret plan" succeed.

39. The Greenpeace vessel *Esperanza* has been stalking the *Noble Discover* and the *Blue Marlin/Polar Pioneer* since they left Malaysia. On March 23, 2015 Greenpeace launched a rigid inflatable boat from the *Esperanza* and spent two hours circling the *Blue Marlin* and conducting reconnaissance. Greenpeace's reconnaissance included conducting various feigns such as stopping in the path of the *Blue Marlin* to see if it would change course, positioning itself in the sun's reflection ahead of the *Blue Marlin*, and proceeding directly at the *Blue Marlin* before veering away.

40. On March 24, Greenpeace announced that its specially selected "six brave people" on a secret mission were, in fact, on the *Esperanza*. The six people include Greenpeace members from several different offices around the world: Andreas Wildlund (Sweden), Miriam Friedrich (Austria), Aliyah Field (United States of America); Zoe Lennox (Australia); Johno Smith (New Zealand); and Jens Lowe (Germany). Greenpeace commonly uses multinational teams from different Greenpeace offices for their boarding groups.

41. Greenpeace USA is directly involved with the operation on the *Esperanza* and Executive Director Anne Leonard has described the six members on board as "our volunteers." Included among these six volunteers is American Aliyah Field, who works for Greenpeace USA and has reportedly been arrested at least twice in Greenpeace USA direct actions.[4] Also included

---

[4] *See* http://www.scpr.org/news/2011/06/07/27144/protester-dressed-barbie-detained-greenpeace-prote/, and http://www.ctpost.com/news/article/Activists-drop-in-on-power-station-1018831.php.

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

in that group is Johno Smith from New Zealand, who is a self-identified "contract climber" and "undercover ninja."[5]

42.     On March 26, 2015, Greenpeace resumed its feigns, with the *Esperanza* closing to within 1/2 nautical mile of the *Blue Marlin*. Because of the navigational safety hazards presented by this action, the Captain of the *Blue Marlin* had to radio the *Esperanza* and instruct it to back off to a safe distance. On April 1, 2015, Greenpeace launched two rigid inflatable boats from the *Esperanza*. The two boats circled the *Blue Marlin* and *Polar Pioneer* for nearly two hours while the occupants of the boats took photos.

43.     Among other things, Greenpeace's tactics like those being employed against the *Blue Marlin* and the *Polar Pioneer* are intended to, and do in fact, create extremely dangerous situations for the Greenpeace activists, the crew of the vessels they board and the boarded vessels as a means of impeding, delaying and stopping activities that Greenpeace has targeted. Recently, similar Greenpeace direct action in the Canary Islands resulted in serious injury. In November 2014, Greenpeace boats launched from the *Arctic Sunrise* in an effort to breach the safety zone around the Repsol oil ship *Rowan Renaissance*. The Spanish Navy intercepted and instructed Greenpeace to vacate the area. Greenpeace ignored the verbal warnings and efforts by the Navy to push Greenpeace inflatables off course. The Navy's efforts to enforce the safety zone ultimately resulted in a collision, injuring two Greenpeace members, including one serious injury to a member who was ejected in the collision and struck by a propeller.

44.     On April 6, 2015, Greenpeace again launched three rigid inflatable boats from the *Esperanza* manned by Greenpeace activists, including the six experienced specialists Greenpeace USA identified as their participants in an "extraordinary" direct action against Shell. The six

---

[5] *See* http://climbeverything.co.nz/.

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

Greenpeace activists, including Greenpeace USA employee Aliyah Field willfully, unlawfully and recklessly boarded the *Blue Marlin* while underway transiting on the high seas of the Pacific Ocean. Subsequently, these same activists willfully, unlawfully and recklessly climbed and continue to tortiously occupy the *Polar Pioneer*. As of the filing of this complaint, the Greenpeace activists have restocked themselves from the *Esperanza*, remain unlawfully and recklessly aboard and occupying the *Blue Marlin* and the *Polar Pioneer*, and have stated their intent to remain indefinitely.

45. The presence of Greenpeace activists of unknown and unascertainable experience and intentions illegally aboard, and otherwise in close proximity to Shell's 2015 exploration drilling activities and vessels, creates an unreasonably dangerous and unpredictable situation in which the safety of neither the Greenpeace activists nor the employees and contractors of Shell could be assured. Greenpeace has a well-established institutional reputation and history for extremist and reckless conduct involving human and marine blockades, and reckless boardings. These intentional tortious acts are intended by Greenpeace to force vessels to alter, delay or stop lawful activities (thereby causing harm to their lawful interests) by directly impeding essential activities or by creating such risk that essential activities are impeded out of fear of causing bodily injury to Greenpeace activists.

46. In the same manner in which it already has used the *Esperanza* against the *Blue Marlin* and the *Polar Pioneer*, Greenpeace uses its vessels, including the *Rainbow Warrior*, *Artic Sunrise* and *Beluga*, in conjunction with smaller inflatable or rigid inflatable boats launched from those vessels, as primary vehicles for its direct action campaign. Given the maneuverability and navigation constraints faced by larger vessels, especially the *Noble Discoverer* and the *Polar Pioneer*, while transiting to and operating in the Chukchi Sea due to their size, sea ice, and

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*

meteorological conditions, efforts by Greenpeace to board or blockade the rigs with smaller vessels (including inflatables), submersibles, drones, kayaks or human divers, or to block the path of these vessels while under tow or tow assist, are extremely dangerous and possibly life-threatening.

47.     As was the case with its 2012 exploration program, Shell has asked the Coast Guard to establish "temporary safety zones" around the *Noble Discoverer,* the *Polar Pioneer,* and certain other vessels while operating in specified locations in 2015.   But as was the case in 2012, these 2015 safety zones will not provide sufficient protection from Greenpeace's threatened direct actions because: (a) they will not cover all vessels or locations (thereby making those vessels or locations targets); (b) they will not extend to the full reach of the anchors and buoys placed on and connecting to the OCS seabed to hold in place and stabilize the *Noble Discoverer* and the *Polar Pioneer* while engaged in exploration drilling; and (c) the past and present conduct of Greenpeace demonstrates only contempt for safety zones, endangerment of lives, and irreparable harm to lawful commerce.

48.     Greenpeace's actions and threatened actions to stop Shell from engaging in exploration of its United States OCS leases in the Arctic Ocean through a series of staged direct illegal and tortious actions violate and threaten to violate, among other things, numerous federal laws and regulations of the United States, including: the International Regulations for Preventing Collisions at Sea ("COLREGS") at 33 U.S.C. § 1602; the prohibition on willful and malicious injuring and attempting to injure any structure, conveyance or other real or personal property in 18 U.S.C. § 1363; the prohibition on negligently operating a vessel or interfering with the safe operation of a vessel in 46 U.S.C. § 2302; the prohibition on the seizure or exercise of control, or the attempt to seize or exercise control, over a ship by force or threat or any other form of

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

intimidation, or to cause damage to a ship which is likely to endanger its safe navigation in 18 U.S.C. § 2280; the prohibition on knowingly and willfully damaging or attempting or conspiring to damage the property of an energy facility in an amount that in fact exceeds or would exceed $5,000, or to cause a significant interruption or impairment of a function of an energy facility in 18 U.S.C. § 1366(c); and the prohibition on violations of the requirements of temporary safety zones established by the United States Coast Guard in 33 C.F.R. § 147.1. Greenpeace's actions and threatened actions also constitutes reckless endangerment of the environment, and reckless endangerment of the vessels, aircraft, and the crews owned, employed or contracted to Shell to conduct, and to support, exploration drilling in the Chukchi Sea on Shell's OCS leases.

49. Shell has no speedy or adequate remedy at law.

50. Shell has invested a considerable amount of resources in order to conduct exploratory drilling offshore in Alaska. To date, that investment is approximately $7 billion. As reported in the press, the costs for the 2015 program alone are expected to exceed $1 billion. Given the extent of Shell's investment and the short summer drilling window, each and every day is of vital importance to Shell in its ability to successfully complete the 2015 drilling program.

## V. CAUSES OF ACTION

### First Cause of Action:
### Intentional Tortious Interference with Maritime Navigation

51. Shell re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 50 of this Complaint.

52. The United States has adopted the International Regulations for Preventing Collisions at Sea, also known as the COLREGS, which are adopted pursuant 33 U.S.C. §§ 1601-1608. The COLREGS set forth a series of rules that vessels must follow in order to avoid

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

collisions, to stay out of one another's path, and to navigate safely. For example, Rules 7 and 8 require vessels to avoid collisions, or risks of collisions, and Rule 18 provides that a power driven vessel shall keep out of the way of a vessel that is restricted in its ability to maneuver, such as a vessel engaged in a towing operation.

53. The United States has also adopted the Convention for the Suppression of Unlawful Acts Against the Safety of Maritime Navigation, *concluded at Rome* Mar. 10, 1988, S. Treaty Doc. No. 101-1, 1678 U.N.T.S. 29004, 27 I.L.M. 668 (1988) (entered into force Mar. 1, 1992; ratified by the United States on Dec. 6, 1994, and entered into force by United States on Mar. 6, 1995) (hereinafter "SUA Convention"). *See* 18 U.S.C. § 2280 (implementing SUA). SUA recognizes that "unlawful acts against the safety of maritime navigation jeopardize the safety of persons and property, seriously affect the operation of maritime services, and undermine the confidence of the peoples of the world in the safety of maritime navigation." SUA Convention, 4th preamble. The SUA Convention makes it an offense if a "person unlawfully and intentionally: . . . (b) performs an act of violence against a person on board a ship if that act is likely to endanger the safe navigation of that ship; or (c) destroys a ship or causes damage to a ship or to its cargo which is likely to endanger the safe navigation of that ship . . . ." SUA Convention, art. 3, § 1(b)-(c). An offense is also committed if a person attempts to commit any of the foregoing, abets the commission of any of the foregoing, or threatens to commit any of the foregoing if "likely to endanger the safe navigation of the ship." Art. 3, § 2.

54. Greenpeace, including Greenpeace USA, has previously interfered with the *Noble Discoverer*, the *Nordica*, the *Fennica*, and the *Harvey Explorer*. Greenpeace USA is now interfering with the *Polar Pioneer* and *Blue Marlin*, and is threatening to continue to interfere with these and other vessels during other stages of the 2015 exploration drilling program by,

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

among other things, hostile boardings and occupation of unsafe locations on vessels that impede operations, blocking the safe path of vessels, and positioning their own power-driven vessels and associated equipment and divers at unsafe locations near and directly in front of vessels at times when such vessels are restricted in their ability to maneuver.

55. Greenpeace's threatened actions to blockade or block the path of these vessels while in navigable waters are in flagrant disregard of the COLREGS, and the SUA Convention and otherwise constitute unlawful obstruction or interference with maritime navigation.

56. If not enjoined, Greenpeace USA, and those acting in concert with Greenpeace USA, intend to and will continue to interfere with the safe navigation of the *Polar Pioneer, Blue Marlin* and other vessels owned or operated by or on behalf of Shell and located in a U.S. ports or operating within U.S. territorial waters, the OCS, waters of the EEZ, and the high seas, all of which will create irreparable and other financial injury to Shell, and place its employees, agents, and contractors at risk of serious injury.

57. Greenpeace USA's threatened actions, and the actions of those acting in concert with it, are a violation under admiralty and maritime law, and federal statutory law.

**Second Cause of Action:**
**Trespass and Trespass to Chattels**

58. Shell re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 57 of this Complaint.

59. A defendant is liable for trespass to chattels if it dispossesses another of the chattel or intermeddles with the chattel. A defendant is liable for trespass to property if it takes possession of, interferes with possession of, or is present upon another's property without lawful right or interest.

60. Greenpeace, including Greenpeace USA, have engaged in a hostile, unlawful and reckless boarding and now occupy the *Polar Pioneer* and the *Blue Marlin*, and have previously boarded and occupied the *Noble Discoverer*, the *Nordica*, the *Fennica*, and the *Harvey Explorer*. Greenpeace is now threatening to commit further trespasses to stop, delay, or interfere with Shell's exploration activities in the Arctic Ocean on its United States OCS leases, by boarding vessels or facilities, chaining or securing persons to anchors, vessels, or facilities, or by otherwise physically occupying, contacting, damaging, or impeding Shell's possession, use, and operation of vessels and facilities, whether located at docks in Seattle, Washington, Dutch Harbor, Alaska or elsewhere, or located on territorial waters, the OCS, the EEZ, or the high seas.

61. These actions and threatened actions by Greenpeace are ultra hazardous, and if accomplished constitute trespass or trespass to chattels.

62. Since Greenpeace activists boarded and occupied the *Polar Pioneer* and the *Blue Marlin*, the Captain of the *Blue Marlin* has repeatedly communicated to the Greenpeace vessel *Esperanza* that its crew are illegally, unsafely and recklessly trespassing, and demanded that they withdraw. These communications have been ignored by Greenpeace.

63. If not enjoined, Greenpeace USA, and those acting in concert with it, will continue to commit trespass and trespass to chattels to the *Polar Pioneer* and the *Blue Marlin*, and intend to and will commit additional acts of trespass and trespass to chattels by boarding vessels or facilities, chaining or securing persons to anchors, vessels, or facilities, or by otherwise physically occupying, contacting, damaging, or impeding Shell's possession, use, and operation of vessels and facilities, including airport operations in Barrow, and by occupying Shell's OCS lease sites, all of which will create financial injury to Shell, and place its employees, agents, and contractors at risk of serious injury.

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH* Page 25 of 31
Case 3:15-cv-00054-SLG Document 1 Filed 04/07/15 Page 25 of 31

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

64. Greenpeace USA's actions and threatened actions, and the actions of those acting in concert with it, are a trespass or trespass to chattels under admiralty and maritime law, federal common law, and state law.

**Third Cause of Action:**
**Private Nuisance**

65. Shell re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 64 of this Complaint.

66. A defendant is liable for private nuisance when they create a substantial and unreasonable interference with the use or enjoyment of real property.

67. Shell has a real property interest in its OCS leases.

68. Greenpeace USA is engaged in a course of conduct that is intended to and that threatens to substantially interfere with Shell's exercise of its OCS lease rights, and its access to and use of its OCS leases.

69. In 2012, Greenpeace USA attempted to interfere with Shell's OCS lease rights by intentionally and knowingly obstructing and interfering with the free passage and operation of the *Noble Discoverer,* the *Nordica*, the *Fennica* and the *Harvey Explorer.* Greenpeace USA is now interfering with free passage and operation of the *Blue Marlin* and the *Polar Pioneer* and threatens to interfere with free passage and operation of the other vessels and aircraft owned or operated by or on behalf of Shell, including the *Noble Discoverer*, for the purpose of preventing Shell from exercising its OCS lease rights. These threatened acts, will occur at docks in Seattle, Washington, Dutch Harbor, Alaska or elsewhere, or located on territorial waters, the OCS, the EEZ, or the high seas. These threatened acts will include hostile boardings and occupation of unsafe locations on vessels that impede operations, blockading vessels, blocking the path of vessels, positioning their own vessels and associated equipment and human divers at unsafe

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

locations near the path of vessels and facilities or on vessels and facilities, or by engaging in other tortious and unlawful actions.

70.     If not enjoined, Greenpeace USA, and those acting in concert with it, intend to and will commit private nuisance interfering with Shell's access to and use of its OCS leases by boarding vessels or facilities, chaining or securing persons to anchors, vessels, or facilities, or by otherwise physically occupying, contacting, damaging, or impeding Shell's possession, use, and operation of vessels and facilities, including airport operations in Barrow, and by occupying Shell's OCS lease sites, all of which will create financial injury to Shell, and place its employees, agents, and contractors at risk of serious injury.

71.     Greenpeace USA's actions and threatened actions, and the actions of those acting in concert with it, are a nuisance under admiralty and maritime law, federal common law, and state law.

**Fourth Cause of Action:**
**Civil Conspiracy**

72.     Shell re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 71 of this Complaint.

73.     A civil conspiracy exists where two or more persons, who by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.  A person may also be liable for the actions of another where they encourage or aid that person in committing a tort.  In order for one member of a civil conspiracy to be liable, not all members of the conspiracy need be named defendants or be joined as defendants.

74.     Greenpeace USA is acting in a concerted action with Greenpeace International and other Greenpeace national offices in an international campaign to Stop Shell exploring for oil and gas in the Arctic.   This concerted action includes the present and ongoing tortious actions

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*   Page 27 of 31

against the *Polar Pioneer* and the *Blue Marlin*, past tortious of acts of unlawful trespass on the *Noble Discoverer*, the *Nordica*, the *Fennica*, and the *Harvey Explorer*, and threatened similar tortious actions against Shell in 2015. Greenpeace USA also encourages and endorses, others to take direct action against Shell's Arctic drilling operations, and solicits and collects funding for such direct action.

75. If not enjoined, Greenpeace USA and its conspirators intend to and will continue to conduct ongoing tortious actions, and will conduct further tortious acts of trespass, trespass to chattels, and nuisance, against Shell's vessels, facilities, aircraft and property owned or operated by or on behalf of Shell and located in a U.S. ports or operating within U.S. territorial waters, the OCS, waters of the EEZ, and the high seas, and further intend to commit maritime torts by interfering with safe navigation, all of which will create both irreparable and financial injury to Shell, and place its employees, agents, and contractors at risk of serious injury.

## VI.     REQUEST FOR RELIEF

WHEREFORE, Shell requests the following relief:

1. Entry of temporary, preliminary, and permanent injunctive relief, (A) commanding that Greenpeace, Inc. its agents, servants, employees, and all others acting in active concert and participation with Greenpeace Inc., immediately withdraw from and vacate the vessels *Blue Marlin* and *Polar Pioneer*, and (B) prohibiting Greenpeace Inc., its agents, servants, employees, and all others acting in active concert and participation with Greenpeace Inc., from engaging in tortious and illegal actions against vessels, facilities, aircraft and property owned or operated by or on behalf of Shell and located in a U.S. port or operating within U.S. territorial waters, the OCS, waters of the EEZ, and the high seas including (i) breaking into or trespassing on any such vessel, property, or facility, (ii) tortiously or illegally interfering with the

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

movement, progress, or operation of any such vessel, property, or facility, (iii) barricading, blocking, or preventing access to or egress from any such vessel, property, or facility; and (iv) endangering or threatening any employee or visitor of Shell or any of its affiliates who is present on, or as they enter or exit, any such vessel, facility, or property;

2.      Entry of temporary, preliminary, and permanent injunctive relief, establishing safety zones around and over essential vessels, facilities, aircraft and property owned or operated by or on behalf of Shell in connection with exploration of its United States OCS leases and located in a U.S. port or operating within U.S. territorial waters, the OCS, waters of the EEZ, and the high seas, and further enjoining Greenpeace Inc., its agents, servants, employees, affiliates and all others acting in active concert or participation with Greenpeace Inc., from entering these safety zones;

3.      Entry of temporary, preliminary, and permanent injunctive relief, and civil and criminal contempt sanctions for any violation of the provisions of the injunction set forth in the proceeding paragraphs;

4.      An award of damages including incidental damages for all economic harm resulting from the tortious actions of Greenpeace Inc. and the individual defendants, and economic harm to Shell as a result of tortious actions by others with whom Greenpeace Inc. is acting in concert;

5.      An award of punitive damages because Greenpeace Inc.'s tortious and unlawful antics are both willful and grossly negligent, and demonstrate a callous disregard for the rights of others; and

6.      An award of any other and further relief, including costs and attorney fees, as the Court deems just and equitable.

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*   Page 29 of 31

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

DATED:  April 7, 2015.

STOEL RIVES LLP

By: s/ Jeffrey W. Leppo
    Jeffrey W. Leppo
    (Alaska Bar No. 0001003)
    Ryan P. Steen
    (Alaska Bar No. 0912084)

    Attorneys for Plaintiff

STOEL RIVES LLP

600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*
*Case No. 3:15-cv-00054-HRH*  Page 30 of 31

Case 3:15-cv-00054-SLG   Document 1   Filed 04/07/15   Page 30 of 31

## VERIFICATION

I, Michael J. Battle, am fully authorized, on behalf of Shell Offshore Inc. and Shell Gulf of Mexico Inc. (collectively "Shell"), to make this verification. The facts set forth in the foregoing Verified Complaint are not all within my personal knowledge, but the information contained therein is drawn from the personal knowledge of the persons whose declarations have previously been filed in this proceeding, and from pertinent business records and information supplied by individuals whom Shell relies upon in the ordinary course of business. Based thereon, I am informed and believe that all of the facts in the foregoing Verified Complaint are true and correct. I verify under penalty of perjury that the foregoing is true and correct.

EXECUTED on April 7, 2015.

Signature: _____

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900    Fax (206) 386-7500

VERIFIED COMPLAINT
*Shell v. Greenpeace, Inc.*                    Page 31 of 31
Case 3:15-cv-00054-SLG   Document 1   Filed 04/07/15   Page 31 of 31