Jeffrey W. Leppo (Bar No. 0001003)
Ryan P. Steen (Bar No. 0912084)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
jeffrey.leppo@stoel.com
ryan.steen@stoel.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHELL OFFSHORE INC., a Delaware corporation, and SHELL GULF OF MEXICO INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GREENPEACE, INC. and JOHN and JANE DOES 1-20,<br><br>Defendants. | Case No. 3:15-cv-00054-RRB<br><br>MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (RULE 65) |

## I. INTRODUCTION

Shell Offshore Inc. and Shell Gulf of Mexico (collectively "Shell") respectfully request that this Court issue a preliminary injunction (or, alternatively, a temporary restraining order) enjoining Greenpeace, Inc. (sometimes called "Greenpeace USA"), its officers, agents, servants, employees, and all others acting in concert with Greenpeace USA from taking dangerous, tortious and unlawful actions that jeopardizes and threatens to cause substantial and irreparable harm to Shell's property interests, the environment, and human life. In 2012, this Court issued a similar preliminary injunction against Greenpeace USA, finding that in the absence of an injunction, Greenpeace USA was likely to commit tortious and illegal acts against Shell in an

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB -1*

effort to "Stop Shell" from conducting exploration on its Outer Continental Shelf ("OCS") leases in the Beaufort and Chukchi Seas.[1]

Greenpeace USA has now resumed its reckless behavior towards Shell. As soon as Shell announced its intention to return to the Arctic for the summer of 2015, Greenpeace USA immediately reinitiated its campaign to stop Shell. As this motion is being filed, six Greenpeace activists, including Greenpeace USA representative and employee Aliyah Field, have illegally boarded the Shell drilling vessel, the *Polar Pioneer,* as it is being transported across the Pacific on the heavy lift vessel, the *Blue Marlin*, en route to the Pacific Northwest. Greenpeace dangerously boarded the *Polar Pioneer/Blue Marlin* while underway on the high seas northwest of Hawaii by launching three rigid inflatable boats from the Greenpeace vessel *Esperanza*, free and rope climbing to illegally board the *Blue Marlin*, and scale onto and occupy the *Polar Pioneer*.

As set forth below and in the accompanying declarations and verified complaint,[2] Greenpeace USA is engaged in, and presently executing upon, a comprehensive and coordinated world-wide campaign to do whatever it takes to stop Shell's 2015 Arctic Ocean exploration program. The imminent harm presented by Greenpeace USA's actions warrants a Court order (i) enjoining Greenpeace USA from engaging in tortious and illegal activities against Shell and its assets and (ii) creating a "safety zone" around Shell's assets so that Shell may continue to carry out its operations in a manner that is safe and responsible. This requested order is squarely

---

[1] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 864 F.Supp. 2d 839 (D. Alaska 2012) (reproduced in the Declaration of Veronica Keithley ("Keithley Declaration") at Exhibit 144).

[2] *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) (verified complaint may be used to support preliminary injunction or restraining order).

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 2*

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

in the public's best interest and presents no harm whatsoever to Greenpeace USA's *lawful* interests.

## II. BACKGROUND

### A. Prior Litigation: *Shell Offshore, Inc. v. Greenpeace, Inc.*

Shell owns interests in certain OCS oil and gas leases, including leases for offshore lands located in Alaska's Chukchi and Beaufort Seas.[3] Shell has spent many years and billions of dollars obtaining multiple approvals from various federal agencies and making necessary arrangements that would allow it to begin exploration activities in the Arctic.[4]

In 2010, when Shell first announced its intent to begin exploring on its OCS leases in the Arctic, Greenpeace USA responded by "unlawfully board[ing] the *Harvey Explorer*, a vessel that Shell contracted to use in Arctic OCS operations."[5] In 2012, when Shell again announced its plans to explore in the Arctic, Greenpeace USA developed and participated in an international campaign to "Stop Shell" from reaching its drill sites.[6] Members of Greenpeace New Zealand boarded and occupied the drillship *Noble Discoverer* for four days while that vessel was stopped in New Zealand en route to the Arctic.[7] Greenpeace USA endorsed and took credit for the event, and described the participants as "our brave activists."[8] Greenpeace USA also made clear that

---

[3] Declaration of Michael J. Battle ("Battle Declaration") at ¶ 4.

[4] Battle Declaration at ¶¶ 12-13.

[5] *Shell Offshore Inc. v. Greenpeace*, 709 F.3d 1281, 1284 (9th Cir. 2013) (reproduced at Exhibit 146 to the Keithley Declaration).

[6] *Id.* at 1284.

[7] *Id.* at 1285.

[8] *Id.* at 1285 (internal quotations omitted).

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

this illegal activity was just the beginning of the campaign, and "only the first chapter in what will undoubtedly be an epic battle."[9]

These threats prompted Shell to seek an injunction in 2012 to prevent Greenpeace USA from continuing to engage in such activity, and from carrying out its threats within the jurisdiction of the United States. While that request was pending, activists from other Greenpeace offices continued their direct actions against the Shell vessels *Nordica* and *Fennica*, by (1) boarding and occupying the icebreakers *Nordica* and *Fennica* at port in Finland on March 16, 2012; (2) boarding and barricading themselves on the *Nordica* again on May 1, 2012, attempting to disable its propulsion system, and placing swimmers in the water in front of the intended path of the vessel; (3) dangerously pursuing the *Nordica* and recklessly boarding it while traveling in open water on May 3, 2012; and (4) placing swimmers in front of the *Nordica* while underway on May 4, 2012.[10]

This Court granted Shell a temporary restraining order, and then a preliminary injunction against Greenpeace USA.[11] The Court rejected Greenpeace's jurisdictional arguments, explaining that it had admiralty jurisdiction (28 U.S.C. § 1333), federal question jurisdiction (28 U.S.C. § 1331) under the Outer Continental Shelf Lands Act, and diversity jurisdiction (28 U.S.C. § 1331) over state law tort claims.[12] The Court explained that "the law recognizes that a

---

[9] *Id*. (internal quotations omitted).

[10] *Id*.

[11] *Shell Offshore, Inc.*, 864 F.Supp. 2d at 854.

[12] *Shell Offshore Inc. v. Greenpeace*, 2012 WL 1931537, *2-5 (May 29, 2012) (Order re All Pending Motions) (reproduced at Exhibit 145 to the Keithley Declaration).

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 4*

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900    Fax (206) 386-7500*

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900  Fax (206) 386-7500*

party may seek injunctive relief to prevent threatened illegal or tortious conduct."[13] The Court determined that Shell had properly pled claims for interference with maritime navigation, trespass and trespass to chattels, and private nuisance.[14] And following an evidentiary hearing, the Court concluded that "Shell has demonstrated by a preponderance of the evidence that it is likely that Greenpeace USA would intend to commit tortious or illegal acts against Shell in the absence of preliminary injunctive relief."[15]

The Ninth Circuit fully affirmed that district court's injunction order.[16] The Ninth Circuit rejected Greenpeace USA's argument that it was not the proper entity to enjoin, because Greenpeace USA was directly involved in the boarding of the *Harvey Explorer* and otherwise took credit for and endorsed the global campaign.[17] The Ninth Circuit further affirmed that the district court had ample basis to find that Greenpeace USA intended to commit torts against Shell in the absence of a preliminary injunction, that Shell would suffer irreparable harm, and that the balance of the equities and public interest favored an injunction.[18]

---

[13] *Shell Offshore, Inc.*, 864 F.Supp. 2d at 847.

[14] *Shell Offshore, Inc.*, 2012 WL 1931537 at *6-13.

[15] *Shell Offshore, Inc.*, 864 F.Supp. 2d at 850. Nor was this the first time this Court issued an injunction against Greenpeace related to offshore drilling in Alaska. This Court issued similar injunctions in *Arco Alaska Inc. v. Greenpeace U.S.A., et al.* and *State of Alaska v. Greenpeace U.S.A., et al.* (Case Nos. A97-0315-cv (HRH) and A97-0317-cv (HRH). *See* Keithley Declarations at Exhibits 140 and 141.

[16] *Shell Offshore, Inc.* 709 F.3d at 1283.

[17] *Id*. at 1289.

[18] *Id*. at 1290-92.

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB* - 5

After the close of the 2012 summer season, Shell asked the Court for permission to voluntarily dismiss its case, without prejudice.[19] Shell sought voluntary dismissal because it appeared that Shell would not be back to the Arctic for some time, and the imminent threat of tortious action from Greenpeace USA became less certain. The Court granted that request.[20]

### B. Shell Plans to Continue Exploration in the Summer of 2015

During the 2015 open water season, Shell intends to conduct exploration activities on federally managed OCS oil and gas leases located approximately 60 to 75 miles offshore of the northwestern coast of Alaska in the Chukchi Sea.[21] The drilling vessels that will be used for 2015 exploration drilling in the Chukchi Sea are the *Noble Discoverer* and the *Polar Pioneer*.[22] As was the case in 2012 (and as is essential for interrelated logistical, safety, environmental and operational reasons), during Shell's 2015 drilling season, the *Noble Discoverer* and the *Polar Pioneer* will each be attended by numerous essential vessels and support aircraft.[23]

Mobilization of Shell's 2015 Arctic exploration fleet is underway. The *Noble Discoverer* and the *Polar Pioneer* left Malaysia in early March of 2015.[24] The *Noble Discoverer* is traveling under its own power, while the *Polar Pioneer* is being transported from Malaysia aboard the heavy lift vessel *Blue Marlin*.[25] Both vessels are destined for ports in Washington to make final

---

[19] *Shell Offshore, Inc. v. Greenpeace, Inc.*, Case No. 3:12-cv-00042, ECF No. 128.

[20] *Id.* at ECF No. 138.

[21] Declaration of David George ("George Declaration") at ¶ 5.

[22] *Id.* at ¶ 12.

[23] *Id.* at ¶ 14; Declaration of Rocky Lee ("Lee Declaration") at ¶ 6.

[24] George Declaration at ¶¶ 15-16.

[25] *Id.*

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 6*

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900   Fax (206) 386-7500

preparations for the drilling season and will ultimately transit to Alaska sometime in May or June.[26] Other essential vessels must transit on a specific schedule from the Pacific Northwest and other locations to the Arctic Ocean.[27] Support vessels are currently located all over the world, including locations in Finland, Louisiana, Washington, and Alaska. [28]

### C. Greenpeace USA is Again Threatening to Commit Torts Against Shell

In January of 2015, Shell announced its intent to resume Arctic exploration drilling in the Chukchi Sea on its United States OCS leases in the summer of 2015. Greenpeace USA immediately reinitiated its "Stop Shell" campaign (now more broadly called the "Save the Arctic" campaign), explaining that it would once again take whatever action is necessary to stop Shell.[29] As Greenpeace's Director of USA operations, Anne Leonard, explained during the 2015 Shell Arctic Campaign kickoff, "we need to do everything that we can do to stop that drilling from happening this summer."[30] She explained: "Greenpeace all around the world have agreed that stopping drilling in the Arctic and protecting the Arctic is a priority" and that all the Greenpeace offices "can work together towards one big global goal."[31] Leonard also clearly reaffirmed that unlike many other environmental groups that may voice their political opposition through lawful means, Greenpeace is willing to do more: "Greenpeace can bring some special

---

[26] *Id.*; Battle Declaration at ¶ 6.

[27] Battle Declaration at ¶ 6.

[28] *Id.*

[29] *Id.* at ¶ 22.

[30] *Id.*

[31] *Id.*

*Shell v. Greenpeace, Inc., et al.*
Case No. 3:15-cv-00054-RRB - 7

things to the table . . . we have ships . . . we have ships and you can do special things with ships when comes to protecting the ocean and I'll leave it at that . . . ."[32]

As was the case in 2012, this threat to do "special things" with vessels is not idle talk from Greenpeace USA. The Greenpeace vessel *Esperanza* has been "stalking" and "chasing" the *Blue Marlin* and *Polar Pioneer*, across the Pacific in pursuit" since March 15, 2015.[33] On board the *Esperanza* were six activists that Greenpeace USA has identified as "our volunteers."[34] Greenpeace USA has been promising that these activists intend to do something "extraordinary" to stop Shell.[35] The international team of activists includes American Aliyah Field, selected by Greenpeace USA as their "star" representative.[36] Field, a Greenpeace USA employee, has been involved in Greenpeace USA direct actions before, including rappelling down a building.[37]

On April 6, 2015, Greenpeace USA made good on its threats.[38] In the middle of the Pacific Ocean, approximately 750 miles northwest of the Hawaiian archipelago, the six activists launched in rigid inflatable boats from the *Esperanza*, engaged in a reckless boarding of the defenseless *Blue Marlin*, and unlawfully scaled and secured themselves on the *Polar Pioneer* where they now remain, notwithstanding sustained communications to the *Esperanza* notifying the ship that its crew is trespassing and has created an extremely unsafe situation, and demanding

---

[32] *Id*.

[33] *Id*. at ¶¶ 24-25, 27.

[34] *Id*. at ¶ 26.

[35] *Id*. at ¶ 28.

[36] *Id*. at ¶ 29.

[37] *Id*. at ¶ 26.

[38] *Id*. at ¶ 28.

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 8*

that the hostile boarding party of six remove themselves.[39] The presence of the professional Greenpeace direct action activists, whose full intentions are unknown and whose actions are unpredictable, unsafe and illegal, presents (and, indeed, is a calculated action by Greenpeace USA to present) an extremely reckless, unreasonably dangerous and intentionally tortious risk to the *Polar Pioneer*, the *Blue Marlin*, their crew and Shell's 2015 Arctic exploration drilling program.[40]

### III. ARGUMENT

To obtain a temporary restraining order or a preliminary injunction, the moving party must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) a temporary restraining order or preliminary injunction is in the public interest.[41] This four-part "traditional test" generally applies whenever preliminary injunctive relief is sought.[42] The Ninth Circuit also has used an alternative test known as the "sliding scale." The "sliding scale" test provides that a party is entitled to injunctive relief upon a showing of either: (1) a combination of probable success on the merits and the possibility of irreparable injury if injunctive relief is

---

[39] *Id*.

[40] *Id.* at ¶ 37.

[41] *Sierra Forest Legacy v. Mark Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009), *citing Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Toyo Tire Holdings of Americas Inc. v. Continental Tire North America, Inc.*, 609 F.3d 975, 982 (2010); Fed. R. Civ. P. 65(b)(1).

[42] *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. at 1021; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

*Shell v. Greenpeace, Inc., et al.*
Case No. 3:15-cv-00054-RRB - 9

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

denied, or (2) the likelihood of success was such that "serious questions going to the merits were raised and the balance of hardships tipped sharply in the plaintiff's favor."[43]

As set forth below, Shell satisfies the traditional four-factor test, with or without consideration of the Ninth Circuit's "sliding scale," and therefore is entitled to injunctive relief.

### A. Shell Is Likely to Succeed on the Merits

Shell's claims are set out in its verified complaint. Greenpeace USA is currently trespassing on the *Polar Pioneer*, after tortiously and illegally boarding the *Blue Marlin* while that vessel was underway, in violation of maritime law and the International Regulations for Preventing Collisions at Sea ("COLREGS"). Unless enjoined, Greenpeace will continue to commit tortious and illegal activities against Shell that constitute interference with safe navigation, trespass, trespass to chattels, and nuisance. Greenpeace USA is committing and threatening to commit these torts as part of a common plan or scheme with other Greenpeace entities, including Greenpeace International, and is further encouraging and soliciting others to engage in similar misconduct, including soliciting co-conspirators to set up a human shield with kayaks at the Port of Seattle.

During the previous litigation, the Court found that Shell had submitted persuasive evidence that Greenpeace USA was participating in a campaign to "Stop Shell" as evidenced by: (a) Greenpeace USA's endorsement of the campaign on its website; (b) the fact Greenpeace USA "fully endorsed the conduct in New Zealand"; (c) the testimony of Greenpeace USA's general counsel that "illegal activity" is one of its "big toolkit of tactics"; (d) the websites of the "various national Greenpeace organizations, including Greenpeace USA, and Greenpeace International demonstrat[ing] that stopping Shell and other oil companies from drilling in the Arctic is more

---

[43] *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 10*

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900 Fax (206) 386-7500*

likely than not one of the overall priority strategies of Greenpeace worldwide as well as Greenpeace USA"; (e) the fact that Greenpeace executive directors "meet regularly with Greenpeace International to determine an overall global strategy;" and (f) the fact that Greenpeace USA had the opportunity to deny that it intended to commit torts against Shell and refused to do so.[44] The Court also found "that the threatened illegal or tortious conduct within the U.S. controlled water would be fairly traceable to Greenpeace USA, as the record demonstrates that Greenpeace USA controls all Greenpeace operations in the United States."[45] Taken in total, the Court concluded "Shell has demonstrated by a preponderance of the evidence that it is likely that Greenpeace USA would intend to commit tortious or illegal acts against Shell in the absence of preliminary injunctive relief."[46]

The current evidence against Greenpeace USA is even stronger this time in at least two key ways. *First*, Greenpeace USA's involvement in the coordinated effort to take direct action against Shell is no longer subject to reasonable dispute. Greenpeace USA's Executive Director has (1) identified the campaign to stop Shell as a "priority;" (2) explained that all offices are working together towards that "one big global goal;" (3) emphasized that "we need to do everything we can to stop that drilling from happening;" (4) threatened to do "special things" to stop Shell involving use of Greenpeace ships; and (5) identified the activists on Board the *Esperanza* as "our volunteers."[47] Greenpeace USA's website actively promotes the activities on

---

[44] *Shell Offshore, Inc.*, 864 F.Supp. 2d at 848-49.

[45] *Id*. at 849; *see also* Keithley Declaration at Exhibit 142.

[46] *Shell Offshore, Inc.*, 864 F.Supp. 2d at 850.

[47] Battle Declaration at ¶¶ 22, 26, 29.

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 11*

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

board the *Esperanza*, and has solicited funding and support for their "secret mission."[48] Greenpeace USA's involvement is further most tangibly confirmed by the direct participation of an experienced direct action Greenpeace USA employee and representative on the *Esperanza*.[49] Moreover, Greenpeace USA has hired (or is in the process of hiring) an Arctic Campaign Organizer in Seattle whose job description includes organizing efforts to "stop Shell's dangerous drilling plans" and Artic Campaign Coordinator whose duties include ensuring successful "direct action . . . as a campaign tactic"[50] This evidence leaves no doubt that Greenpeace USA is the proper defendant in this case.

Indeed, any possible doubt has been dispelled by the direct, hostile and ongoing boarding action of six Greenpeace activists, including Greenpeace employee and representative Field. This tortious action occurred exactly as Greenpeace USA threatened it would, and its public statements since the boarding expressly and deliberately take credit for, encourage, fund and promote the ongoing reckless conduct of its employee and those acting in concert with Greenpeace USA.

*Second*, Greenpeace's pattern of illegal behavior against Arctic exploration activities is now undeniable. Greenpeace has committed direct action against Arctic exploration and development activities *every year for at least the last five years*.[51] Shell is this year's target. Unless enjoined, Greenpeace USA will continue to commit torts against Shell on the high seas,

---

[48] *Id*. at ¶¶ 23, 29-30.

[49] *Id*. at ¶¶ 26, 27, 29.

[50] *Id*. at ¶¶ 31.

[51] *Id*. at ¶ 33.

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

in the United States Exclusive Economic Zone, the Outer Continental Shelf, U.S. territorial waters and ports.[52]

In short, Greenpeace USA has illegally boarded Shell vessels in the past, is currently doing so at this very moment, and is threatening further direct action against Shell's planned operations this summer. Greenpeace USA has no legitimate dispute as to the legality of its actions. Greenpeace USA cannot and will not deny that it has committed and intends to commit illegal actions against Shell because the tactics it employs are a matter of public record, well-established, and fundamental components of the overarching strategy used by Greenpeace to further its policy objectives through media-grabbing reckless publicity stunts. Shell is not only "likely" to succeed on the merits of its claims; it is certain to succeed on the merits because Greenpeace USA and those acting in concert with it are already indisputably engaged in tortious and unlawful direct actions against Shell.

### B. Shell Will Suffer Irreparable Harm

In 2012, the Court found that Shell presented persuasive evidence of irreparable harm if Greenpeace USA was not enjoined. The Court agreed that Shell would suffer irreparable financial harm "if Greenpeace USA successfully disrupted Shell's operations" because "calculating the amount of economic harm would be very difficult.[53]" The Court was also "fully persuaded" of the "likelihood of irreparable harm to human life, property, and/or the

---

[52] The fact that the current tortious act by Greenpeace USA are occurring on the high seas is no impediment to the court's jurisdiction as admiralty jurisdiction has always extended to the high seas. *Myhran v. Johns-Manville Corp.*, 741 F.2d 1119, 1120 (9th Cir. 1984). Indeed, the Ninth Circuit in *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 945 (9th Cir. 2013), recently granted a preliminary injunction involving violations of the COLREGS and other international laws on the high seas based on torts by environmental activists.

[53] *Shell Offshore, Inc.*, 864 F.Supp. 2d at 850-51.

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 13*

environment if Greenpeace USA activists were to attempt actions similar to those undertaken by other Greenpeace activists in New Zealand, Finland, or off the Coast of Greenland."[54]

Those concerns are equally present in this case. Shell will likely suffer irreparable financial injury that is difficult to measure if Greenpeace USA is able to delay the *Blue Marlin* and *Polar Pioneer*, occupy or delay other vessels en route to the Arctic, or while engaged in explorations activities in the Arctic. Moreover, as was the case last time, Greenpeace's dangerous tactics such as blockading vessels in transit, blocking access to vessels attempting to dock at port, boarding vessels, placing swimmers in the water in front of vessels, hanging climbers on the sides of vessels, hanging survival pods on vessels, attempting to foul propulsion systems and chaining of individuals to anchors, vessels, or other facilities, create unsafe and hazardous conditions and increase the risks of collisions or allisions, injuries to personnel, damage to essential facilities and equipment, and harm to the environment from a catastrophic event.[55] Here too, the record is even stronger than 2012, as recent actions by Greenpeace have resulted in boat collisions and injuries.[56] Unless enjoined by this Court, Greenpeace USA will continue to execute on its threats, and Shell will suffer irreparable harm exactly as Greenpeace USA intends.

### C. The Equities Strongly Favor Shell

The Court in 2012 found that the balance of the equities "solidly tipped in Shell's favor."[57] The Court explained that "to the extent that the competing interests of Greenpeace

---

[54] *Id.*

[55] George Declaration at ¶ 19, 22, 27, 30, 32, 34-43, ; Lee Declaration at ¶ 8, 10..

[56] Battle Declaration at ¶ 34.

[57] *Shell Offshore, Inc.*, 864 F.Supp. 2d at 853.

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 14*

USA are illegal or tortious activities, the balance of the equities undoubtedly tips to Shell."[58] The Court further recognized that Greenpeace USA has the right to protest vigorously against Shell. The Court minimized impacts to those rights by "carefully tailoring the preliminary injunctive relief to focus on illegal conduct, and minimizing any impact on Greenpeace USA's right to monitor activities and peacefully protest against Shell within the confines of the law."[59]

The same analysis applies with equal force to this request for injunctive relief. Shell is only seeking to stop Greenpeace USA's illegal activities by establishing "safety zones" around Shell's assets that will allow Shell to continue to carry out its operations in a safe and responsible manner. The requested safety zones do not interfere with Greenpeace USA's ability to monitor Shell's activities or engage in peaceful protest. As such, the equities tip sharply in favor of Shell.

### D. An Injunction is in the Public Interest

The Court in 2012 found that the public interest favored an injunction against Greenpeace USA. The Court explained that the "public interest is not disserved by an injunction that precludes illegal or tortious conduct" and that "Greenpeace USA's legitimate interests in monitoring and legally protesting Shell's activities can be minimized."[60] The Ninth Circuit affirmed that there is "a public interest in the 'expeditious and orderly development' of the OCS."[61] This conclusion remains sound and unassailable. Under the existing circumstances and evidence, Shell's requested injunction is in the public interest.

---

[58] *Id*. at 852.

[59] *Id*. at 853.

[60] *Id*.

[61] *Shell Offshore*, 709 F.3d at 1292.

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 15*

## IV. CONCLUSION

For the foregoing reasons, Shell has established that: (1) it is likely to succeed on the merits against Greenpeace USA; (2) it is likely to suffer irreparable harm in the absence of the injunctive relief requested; (3) the balance of equities tips conclusively in Shell's favor; and (4) a temporary restraining order and preliminary injunction are in the public interest. Accordingly, Shell respectfully requests that this Court enter a temporary restraining order, as set forth in the Proposed Order accompanying Shell's motion, and a preliminary injunction.

DATED: April 8, 2015

STOEL RIVES LLP

By: s/ Jeffrey W. Leppo
  Jeffrey W. Leppo
  (Bar No. 0001003)
  Ryan P. Steen
  (Bar No. 0912084)

  *Attorneys for Plaintiffs*

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

# CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2015, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court - District of Alaska by using the EM/ECF system. I further certify that on April 8, 2015, a copy of the foregoing *Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction (Rule 65)* was served by email and regular U.S. Mail on the following:

Michael A. Moberly
Hozubin, Moberly, Lynch & Associates
711 M Street, Suite 2
Anchorage, AK 99501
Email: mike@akdefenselaw.com

/s/ Jeffrey W. Leppo
Jeffrey W. Leppo (AK Bar No. 0001003)

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900   Fax (206) 386-7500*

78625963.2 0079498-00003

*Shell v. Greenpeace, Inc., et al.*
*Case No. 3:15-cv-00054-RRB - 17*