Michael A. Moberly, Esq.
HOZUBIN, MOBERLY, LYNCH & ASSOCIATES
711 M Street, Suite 2
Anchorage, AK 99501
Telephone: 907-276-5297
Facsimile: 907-276-5291
E-mail: mike@akdefenselaw.com
Alaska Bar No. 9612073

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHELL OFFSHORE INC., a Delaware corporation, and SHELL GULF OF MEXICO INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> GREENPEACE, INC., a California corporation, and JOHN and JANE DOES 1-20, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 3:15-cv-00054-SLG |

**GREENPEACE USA'S OPPOSITION TO SHELL'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**Introduction**

Defendant Greenpeace, Inc. (Greenpeace USA), by and through its counsel of record, Hozubin, Moberly, Lynch & Associates, opposes the Motion for Temporary Restraining Order (TRO) and Preliminary Injunction filed by Plaintiff Shell Oil Company (Shell Oil).

The Court should deny Shell's motion for a TRO at this time because Shell fails to meet every element required. First,

Shell cannot succeed on the merits of the case.  Greenpeace USA has not taken any action warranting injunctive relief, even of a temporary nature.  Shell's current conflation between Stichtig Greenpeace Council (Greenpeace International) and Greenpeace USA is misleading in this regard.  The events leading up to Shell's decision to file the current TRO are attributable to Greenpeace International, not Greenpeace USA.  Consequently, Shell cannot beat Greenpeace USA on the merits of the case.

Second, Shell cannot establish the threat of irreparable harm from Greenpeace USA.  Not only are the "dangerous" actions Shell describes in its Complaint and its Motion not attributable to Greenpeace USA, but Shell also greatly inflates the severity of these actions.  Shell can point to no instance of Greenpeace USA attempting to board rigs or anything of this nature within U.S. territorial waters.  Consequently, Shell cannot establish that Greenpeace USA actions threaten irreparable harm.

Third, the balance of the equities tips in Greenpeace USA's favor.  Other than referring to the Court's 2012 Order, Shell makes no argument regarding why the equities tip in its favor.  Greenpeace USA, however, plays a federally recognized role in exposing Outer Continental Shelf Lands Act (OCSLA) violations.  It also has a First Amendment right to protest Shell's drilling

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 2
Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 2 of 33

activity.  Because these interests match or outweigh those of Shell, Shell cannot establish this element.

Fourth, the scope of the injunctive relief Shell seeks is not in the public interest.  Granting Shell's current motion for TRO will unduly restrict Greenpeace USA's First Amendment right to observe, comment on, and protest Shell's activity.

**Background:**

**The Case Against Shell**

Shell acknowledges that "climate change is real and it's a threat [Shell] want[s] to act on."[1]  Shell further admits that "A fundamental transition of the energy system will be needed."[2] Shell nonetheless has no plans to fundamentally transform its own business.[3]  In fact, in 2009 Shell announced that it would end its investments in renewable technologies.[4] These investments amounted to only 1.5% of Shell's total investments, merely the tip of Shell's financial iceberg.[5] Shell's concentrated focus on biofuels will, however, contribute to destroying the Arctic's

---

[1] http://www.washingtonpost.com/blogs/wonkblog/wp/2014/09/10/ceo-of-royal-dutch-shell-climate-change-discussion-has-gone-into-la-la-land/
[2] http://s02.static-shell.com/content/dam/shell-new/local/corporate/corporate/downloads/pdf/investor/presentations/2014/sri-web-response-climate-change-may14.pdf
[3] Id.
[4] http://www.theguardian.com/business/2009/mar/17/royaldutchshell-energy
[5] http://www.rollingstone.com/politics/news/big-oils-big-lies-about-alternative-energy-20130625

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 3

genuine icebergs and priceless ice cover,[6] the loss of which will only amplify global warming.[7]

This amplification plays into Shell's hands. As more biofuels are burned, the more easily will oil conglomerates like Shell be able to replace them. The quicker the Arctic ice sheet melts, the easier it is to drill offshore for the reserves there. But in perpetuating this process, Shell and the other oil majors must violate the international community's target of keeping global warming below two degrees Celsius (3.6 degrees Fahrenheit).[8]

Greenpeace is shining a spotlight on these environmental atrocities for the world to see. It also plans on watching over Shell's activity in the Chukchi Sea, where Shell's track record is already objectively reprehensible.[9] Shell has made no attempt to quantify the cost of a worst-case scenario in the event of a spill.[10] Moreover, Shell's ill-advised decision to have its

---

[6] http://nsidc.org/arcticseaicenews/files/2015/03/Figure3.png
[7] http://www.livescience.com/43435-arctic-sea-ice-melt-causes-dramatic-warming.html
[8] http://www.iea.org/publications/freepublications/publication/english.pdf
[9] https://www.shell.us/aboutshell/projects-locations/alaska/events-news/02172012-osrp.html
[10] http://www.publications.parliament.uk/pa/cm201012/cmselect/cmenvaud/1739iv/120314.htm

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 4

drill, the *Kulluk*,[11] towed across the northern Gulf of Alaska,[12]
or the violations and crimes of its contractor on the *Noble
Discoverer*, are among other lapses in its previous drilling
season.

## Argument

Injunctions are "drastic and extraordinary" remedies.[13]
They "should not be granted as a matter of course."[14] Where less
drastic remedies are sufficient to redress a plaintiff's injury,
"no recourse to the additional and extraordinary relief of an
injunction [is] warranted."[15] The "'mere possibility of a future
nuisance will not support an injunction.'"[16] Rather, for this
Court to grant Shell the injunctive relief it seeks, the risk of

---

[11] http://www.nytimes.com/2015/01/04/magazine/the-wreck-of-the-kulluk.html?_r=0

[12] In the final days of 2012, Shell made an ill-advised decision to tow its other drill rig, the *Kulluk*, across the northern Gulf of Alaska, in part to avoid millions of dollars in tax liability that would accrue if the rig remained in Alaska waters into the new year. On 27 December 2012, the rig ran into serious trouble in heavy weather, forcing the Coast Guard into a hazardous at-sea evacuation of the rig. On 31 December 2012, the *Kulluk* ran aground on Sitkaladik Island, sustaining heavy damage. Fortunately, the 143,000 gallons of diesel fuel on board were not released into the environment. The incident is chronicled in a recent New York Times Magazine expose.

[13] Weinberger v. Romero-Barcelo, 456 U.S. 305, 311–312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)

[14] Id.

[15] Id.; see also Winter v. Natural Res. Def. Council, Inc., 555 U.S., at 20, 129 S.Ct., at 380–382.

[16] Monsanto Co. v. Geertson Seed Farms, 130 S.Ct. 2743, 2757 (2010) (italics in original) at 2770 (Stevens, J., dissenting) (quoting 5 J. Pomeroy, A Treatise on Equity Jurisprudence and Equitable Remedies, § 1937 (§ 523), p. 4398 (2d ed.1919)).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 5
Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 5 of 33

the nuisance Greenpeace USA presents must be "greater than a reasonable man would incur."[17]

### 1. A TRO is inappropriate here because Shell cannot establish a single one of the four necessary elements for injunctive relief

The standard for obtaining a temporary restraining order is the same as that for a preliminary injunction.[18] For this Court to issue a TRO against Greenpeace USA, Shell must prove all of the following factors:[19] (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in its favor; and 4) that temporary injunctive relief is in the public interest.[20] In the Ninth Circuit, a sliding scale analysis may be applied in weighing factors (1), the likelihood of success on the merits, and (3), the balance of the equities.[21]

"It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test set out above."[22]

---

[17] Id.
[18] Winter, 555 U.S. at 20.
[19] Id.
[20] Id.
[21] Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).
[22] Monsanto Co., 130 S.Ct. at 2757 (2010) (italics in original).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 6

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 6 of 33

If Shell fails to meet one of these requirements the Court has no authority to issue a TRO.[23] Shell, however, cannot meet <u>any</u> of the necessary requirements, <u>with or without</u> application of the sliding scale. Accordingly, this Court may not temporarily enjoin Greenpeace USA at this point.

### A. Shell cannot succeed on the merits of the case because Greenpeace USA has not made any action that warrants injunctive relief, even of a temporary nature

Before a court may apply the sliding scale approach to this factor, the Ninth Circuit requires that, "at an irreducible minimum, . . . the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation."[24] Shell cannot make such a demonstration because Greenpeace USA has not engaged in any activity that could lead to litigation.

In Shell's lexicon, "Greenpeace" refers to Greenpeace International, and "Greenpeace USA" refers to Greenpeace, Inc., the U.S. branch of the Greenpeace family. Shell's Complaint and its Motion for TRO oscillate back and forth between mention of "Greenpeace" and "Greenpeace USA" without distinguishing between the two.[25] The resulting conflation would hold

---

[23] <u>Winter</u>, 555 U.S. at 20.
[24] <u>Pimental v. Dreyfus</u>, 670 F.3d 1096, 1105-06, 1111 (9th Cir. 2012)
[25] <u>See</u> Compl. at ¶¶ 1-6, 13, 23-25, 27-48, 54-57, 60-64, 73-75. Particularly egregious are instances where Shell describes allegations of Greenpeace International behavior and then immediately begins

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
<u>Shell et al. v. Greenpeace et al.</u>
3:15-cv-00054-SLG
Page 7

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 7 of 33

Greenpeace USA accountable for every single Greenpeace action on

a worldwide scale since at least 2010. Consequently, the Court

must be suspect of every use of the generic "Greenpeace" that

surfaces in Shell's pleadings. Any connection between the

actions of Greenpeace International and the culpability of

Greenpeace USA for those actions is tenuous at best. In most

cases, it is non-existent.

Shell's general misrepresentation is especially misleading

in its argument that Greenpeace USA is to blame for the recent

boarding of the *Blue Marlin*. Because Greenpeace International

completely controls the *Blue Marlin* boarding,[26] neither Shell nor

this Court can rightfully use the boarding as an example of how

Shell's case for injunctive relief against Greenpeace USA has

any merit.

Ben Ayliffe, Head of the Arctic Oil division for Greenpeace

International, faxed a letter to several Shell representatives

at the moment the Greenpeace International activists boarded the

---

discussing Greenpeace USA in an attempt to elide any distinction
between the two. See, e.g., ¶¶ 62 &63, where Shell describes
Greenpeace International's boarding of the *Blue Marlin* and then
states, "If not enjoined, Greenpeace . . . will continue to commit
trespass and trespass to chattels to the *Polar Pioneer* and the *Blue
Marlin*." Greenpeace USA cannot "continue" any trespass, however,
because Greenpeace USA has not engaged in any trespass. See generally
*Mot. for TRO*.
[26] Decl. of Daniel Simmons at ¶ 6.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 8

*Blue Marlin*.[27]  The letter informed Shell of two main things.
Speaking to the issue of "irreparable harm" (discussed in more
detail below), the letter was titled "**RE:  PEACEFUL PROTEST ON
'POLAR PIONEER' AGAINST ARCTIC OIL DRILLING.**"[28]  Secondly, the
very first sentence of the letter stated, plainly, that "Six men
and women from the Greenpeace International-operated vessel MY
Esperanza are currently undertaking a peaceful protest on the
rig *Polar Pioneer*, . . . which is in transit on board the heavy
lift vessel (HLV) *Blue Marlin* . . . in high seas of the Pacific
Ocean."[29]

Shell's only real evidence of Greenpeace USA's involvement
in the *Blue Marlin* boarding consists of two items:  1) that a
Greenpeace USA staff member is one of the six volunteers who
boarded the ship,[30] and 2) that Greenpeace USA posted updates of
the *Esperanza* following the *Blue Marlin* on its webpage and its
Facebook page.[31]  This evidence is weak.

Shell argues that Greenpeace USA is "directly involved with
the operation on *Esperanza*."[32]  This assertion is not correct.[33]
The operational manager of the *Esperanza* is from Stichting

---

[27] Exhibit 1.
[28] Id.
[29] Id.
[30] Compl. at ¶ 41; *Mot. for TRO* at 8.
[31] Compl. at ¶¶ 34-40; *Mot. for TRO* at 6-8.
[32] Compl at ¶ 41; *Mot. for TRO* at 8.
[33] Decl Robin Taylor at ¶ 7.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 9

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 9 of 33

Greenpeace Council of Greenpeace International.[34]  Simply having

a Greenpeace USA member on board the *Esperanza*, however, does

not lead to the conclusion that Greenpeace USA has any control

over these actions.  To suggest otherwise is akin to using a

long-arm jurisdictional statute to implicate legal culpability.

But Shell needs more than Greenpeace USA's minimal contacts with

the *Esperanza* find Greenpeace USA responsible for the recent

boarding on which it bases its argument for injunctive relief.

    Shell's second piece of evidence of Greenpeace USA's

control over the situation in the Pacific Ocean borders on the

absurd.  Simply posting updates on a webpage and a Facebook page

does not constitute involvement in the activity; much less does

it show any control.  Were the opposite true, then by extension

of Shell's logic the entire Associated Press and any individual

who made any mention of the *Esperanza* following the *Polar

Pioneer* on Facebook or Twitter or any form of social media could

be hauled into court and enjoined from any kind of vague,

"dangerous" activity against Shell.

    Shell's message is clear:  if you portray Shell in a poor

light, then you are interfering with their hazardous

environmental operations.  You therefore need to be stopped.

---

[34] <u>Id.</u> at ¶ 8.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
<u>Shell et al. v. Greenpeace et al.</u>
3:15-cv-00054-SLG
Page 10

But there is no legal merit in arguments of this kind.  The
Court cannot find otherwise.

Accordingly, because Shell has failed to meet the
irreducible minimum standard, it cannot possibly succeed on the
merits of the case.  Consequently, Shell fails to meet this
factor and the Court may not issue a TRO.

### B. Shell cannot show irreparable harm because no concrete exigent circumstances exist indicating any threatened harm to Shell whatsoever

To meet this factor, Shell must show not merely the
possibility, but the likelihood of irreparable harm.[35]  But Shell
can point to no concrete actions threatened or undertaken by
Greenpeace USA to interfere with its 2015 Arctic drilling
campaign.  Shell's allegation of irreparable harm is illusory.
Shell looks to incidents that took place in the distant past,
but this Court must focus on the imminent future.  Moreover, in
addition to wrongfully attributing many of these actions to
Greenpeace USA, Shell exaggerates and misrepresents the severity
of the actions themselves.

For instance, Shell claims that "Greenpeace and/or its
members [*i.e.*, Greenpeace International, but in Shell's
conflated lexicon, by extension it must implicate Greenpeace
USA] . . . have been found guilty of numerous unlawful acts

---

[35] <u>Winter</u>, 555 U.S. at 20.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
<u>Shell et al. v. Greenpeace et al.</u>
3:15-cv-00054-SLG
Page 11

including trespass and piracy."[36]  But Shell fails to give a

single example of a conviction for anything.  Shell merely lists

a series of actions, some of which, but not all, may have

resulted in arrests – and in one or two cases, charges – but

Shell fails to make any mention of any conviction by any court

anywhere in the world, let alone a piracy or trespass

conviction.

Shell's mention of a piracy charge[37] would appear to be an

erroneous reference to the charge laid against the crew of the

Arctic Sunrise by Russia, which was widely ridiculed and later

withdrawn.[38]  The Dutch government has initiated arbitration

against the Russian government over its arrest of the crew of

30.  This arbitration is currently ongoing.[39]  The Dutch argue

that Russia had no jurisdiction over the *Arctic Sunrise* as it

was in international waters.

Indeed, Shell's Complaint and its Motion for TRO are chock

full with assertions but very scarce on hard facts.  Shell

mentions that the *Russian Gazprom* deliberately flipped over a

Greenpeace boat and that Russian Coast Guard officers used

machine gun fire against activists.[40]  Clearly, Greenpeace did

---

[36] Compl. at ¶ 30.
[37] Id.
[38] Decl. Daniel Simons at ¶ 9.
[39] hyperlink http://www.pca-cpa.org/showpage.asp?pag_id=1556
[40] Compl. at ¶ 30(d) and (f).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 12
Case 3:15-cv-00054-SLG  Document 28  Filed 04/09/15  Page 12 of 33

not inflict these actions against itself. It is fallacious to attribute the dangerous activity of the Russian military to the Greenpeace activists against whom it was inflicted. But it is an even greater stretch of reasoning to associate those actions with Greenpeace USA. Or is Shell suggesting that it will begin shooting at Greenpeace USA activists in the Chukchi Sea and flipping over Greenpeace USA boats? Shell's meaning is unclear to say the least, but it certainly does not show how Greenpeace USA might irreparably harm Shell.

Similarly, Shell mentions an injury during a recent Greenpeace protest in the Canary Islands.[41] This was the result of the ramming of the Greenpeace boats by the Spanish navy. The Dutch Shipping Inspectorate investigated the incident and concluded that the injury was the direct result of poor seamanship by the Spanish navy, and that Greenpeace was not responsible for poor seamanship. Shell claims Greenpeace activists were rescued by the Greenland police,[42] but this was immediately disputed at the time.[43]

The evidence upon which Shell bases its argument that Greenpeace USA will cause it irreparable harm is far less

---

[41] Compl. at ¶ 43.
[42] Compl. at ¶¶ 30(a) & 43;
[43] hyperlink:
http://www.theguardian.com/environment/2010/sep/02/greenpeace-abandons-oil-rig

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 13

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 13 of 33

impressive.  As discussed above, Shell wrongly attributes the
activity in the Pacific to Greenpeace USA.  It argues that
Greenpeace International's conduct illustrates how Greenpeace
USA will irreparably harm Shell in the Chukchi Sea.  The most
egregious harm Shell can point to that has taken place in the
current situation in the Pacific is Greenpeace International's
boarding of the *Blue Marlin*.  But Shell cannot argue that even
this "danger" legitimately constitutes "irreparable harm."  Had
Shell actually perceived the boarding as harmful, it would have
immediately requested maritime police assistance.  But in fact
Shell did not ask the U.S. Coast Guard for assistance, despite
having had ample opportunity.  As the recent US News article
states,

> Petty Officer Third Class Melissa McKenzie of the
> Coast Guard's 14th District in Honolulu confirmed the
> Coast Guard received word from Blue Marlin crew
> members that a group had boarded the vessel.  The
> office did not receive a request for assistance.[44]

The boarding of the *Polar Pioneer* aside, the other immediate
"dangers" Shell points to in the Pacific are illusory.  Shell
claims that, while the *Esperanza* began resuming feigns within ½
nautical mile of the *Blue Marlin*, the *Blue Marlin* radioed and

---

[44] hyperlink:
http://www.usnews.com/news/business/articles/2015/04/06/greenpeace-
activists-board-arctic-offshore-drill-ship

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 14

instructed the *Esperanza* to back off to a safe distance.[45]  This

statement is inaccurate throughout, down to the distance Shell

claims the *Esperanza* conducted its feigns.  As Rob Taylor, the

Project Leader on board the *Esperanza*, states, the *Esperanza* was

somewhere between .8 to a full nautical mile away from the *Blue

Marlin*.[46]  More importantly, there simply was "no navigational

hazard."[47]  Regarding this incident, Rob Taylor states,

> The weather, the course, and the speed involved posed
> no navigational hazard and there was no risk of
> collision.  Calling another vessel when it approaches
> is good seamanship when you are unsure of the
> approaching vessel's purpose.  When the captain of the
> Blue Marlin called, we replied.  He was satisfied.  He
> said "okay."  The Blue Marlin raised no navigational
> concern after that communication.[48]

Shell also suggests that Greenpeace International's inflatable

boats circling the *Blue Marlin* presented some kind of

navigational danger.[49]  But "circling does not represent a

navigational danger to the vessel being circled."[50]  Greenpeace

International did nothing while circling the vessels but take

photos.[51]

---

[45] Compl at ¶ 41.
[46] Decl. Rob Taylor at ¶ 8.
[47] Id.
[48] Id.
[49] Compl at ¶ 42.
[50] Decl. of Rob Taylor at ¶ 9.
[51] Id.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 15

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 15 of 33

Elsewhere Shell alleges that Greenpeace International's "tactics[,] like those being employed against the *Blue Marlin* and the Polar Pioneer[,] are intended to, and do in fact, create extremely dangerous situations for Greenpeace activists, the crew of the vessels they board and the boarded vessels as a means of impeding, delaying and stopping activities that Greenpeace has targeted."[52]

This allegation is simply inaccurate in general, but especially so with regard to the current situation. As Rob Taylor states, "Greenpeace International has not stopped, impeded, or delayed any operations of the *Blue Marlin*."[53] Indeed, the captains of the *Esperanza* and the *Blue Marlin* have been in constant communication in order to avoid any interference with Shell's activities,[54] and all news reports regarding this situation universally show the absence of extreme danger.

In fact, Shell contradicts its erroneous allegations of Greenpeace's generation of extremely dangerous activity by stating that "six experienced specialists . . . unlawfully and recklessly boarded the *Blue Marlin*." The fact that Shell recognizes the specialized experience of the boarders shows that

---

[52] Compl at ¶ 42; *Mot. for TRO* at 11.
[53] Decl. of Rob Taylor at ¶ 10.
[54] Id.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 16

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 16 of 33

Shell does not believe they created an "extremely dangerous" situation. The six experienced volunteers who boarded the *Polar Pioneer* are "extremely well-trained in industrial rope access techniques and certification to Industrial Rope Access Trade Association (IRATA) standards."[55]

Shell follows this contradictory allegation by propagating another falsehood, that the activists "have stated their intent to remain indefinitely."[56] But in fact, Greenpeace International reps aboard the *Esperanza* informed the captain of the *Blue Marlin* by radio that "the climbers would stay on the *Polar Pioneer* as long as it is safe."[57]

Further support for Greenpeace International's claim that their activity is not hazardous abounds: the radio script to the *Blue Marlin*, the initial press release at the start of Greenpeace International's peaceful protest, and the fact that the *Esperanza* is in constant communication with the activists on the *Polar Pioneer* all day, every day.[58] Greenpeace International conducted a risk assessment before boarding the *Polar Pioneer*, it has radioed the *Blue Marlin* each time it has resupplied the six experienced specialists on board, and it has made abundantly

---

[55] Id. at ¶ 11.
[56] Compl. at ¶ 44.
[57] Decl. of Rob Taylor ¶ 11.
[58] Id. at ¶ 11.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 17

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 17 of 33

clear to the *Blue Marlin* that the climbers will come down if there is any danger.[59]

This evidence more than adequately shows that Shell's characterization of the actions of Greenpeace International as extremely dangerous are exaggerated and overinflated. More importantly, it irrefutably demonstrates that Greenpeace USA poses no threat to Shell whatsoever: these are safe and responsible actions conducted by Greenpeace International, not Greenpeace USA. Because Shell can point to no indicia of any imminent irreparable harm coming from Greenpeace USA, it fails to meet this factor. Consequently, this Court may not issue a temporarily restraining order.

**C.    The balance of the equities tips in Greenpeace USA's favor because of the federally recognized role Greenpeace USA plays in exposing OCSLA violations and because of Greenpeace USA's First Amendment right to protest Shell's drilling activity**

The Ninth Circuit will not grant preliminary injunctive relief "unless [the] public interests outweigh other public interests that cut in favor of *not* issuing the injunction."[60] Shell's current *Motion for TRO* makes absolutely no substantive discussion regarding why the balance of equities tips in its

---

[59] Id. at ¶ 12.
[60] Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1138 (9th Cir. 2011) (emphasis in original).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 18

favor.[61]  All Shell does is refer to the Court's 2012 decision.[62]
Shell's resting on its laurels here displays the arrogance of
its assumptions that it can do no wrong, even when it wreaks
havoc on the environment.

The public interests militating against enjoining
Greenpeace USA, however, abound.  Accordingly, Shell cannot meet
this factor and the Court must not issue a TRO.

First, Greenpeace USA has a federally recognized role to
play in exposing Shell Oil for violations of the lease
provisions allowing Shell's exploration drilling in the Outer
Continental Shelf (OCS).[63]  Environmental organizations like
Greenpeace USA have procedural standing to bring suit to enforce
OCSLA's environmental safeguards.[64]  Shell has failed to provide
any evidence that Greenpeace intends to interfere with Shell's
lawful drilling activities.  But in the aftermath of the
*Deepwater Horizon*, and especially in the aftermath of Shell's
own reckless activities regarding the *Kulluk* or supervision of

---

[61] *Mot. for TRO* at 14-15.

[62] Id.

[63] See Center for Biological Diversity v. United States Dep't of
Interior, 563 F.3d 466 (D.C. Cir. 2009).

[64] See id. at 479; Abbott v. BP Exploration and Productions, Inc., 781
F.Supp.2d 453 (S.D. Tex. 2011) (holding that the plaintiffs, a citizen
and a consumer advocacy organization that supported environmental
protection, had standing to sue British Petroleum.  Among other
claims, the plaintiffs sued under a provision of the OCSLA which
authorizes "any person having a valid interest" to bring an action to
"compel compliance" with the provisions of the OCSLA and regulations
adopted pursuant to that statute.  Id. at 468 (*citing* 43 U.S.C. §
1349(a)(1))).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 19

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 19 of 33

its contractors regarding the *Noble Discoverer*, it is a
tantamount – if not paramount - public interest for Greenpeace
to monitor Shell and peacefully protest the devastating harm the
company wreaks on the environment.

Furthermore, United States law and policy recognize
Greenpeace USA's substantial interest in calling attention to
Shell's activities. These laws and policies extend the hope of
preventing serious environmental damage ecologically sensitive
to Alaska OCS.[65] Working hand in hand with this federally
recognized substantial interest is Greenpeace USA's
constitutionally protected First Amendment right to free speech
– the right to protest. The Court must accord these combined
interests their due weight when balancing the equities here. In
doing so, the Court cannot fail but to award this factor to
Greenpeace. Consequently, the Court cannot issue Shell's
requested TRO.

> **D.   The scope of the injunctive relief Shell seeks is not
> in the public interest because it unduly restricts
> Greenpeace USA's First Amendment right to protest
> Shell's activity**

Mandatory precedent requires that any injunction issued
must only address those specific likely harms that Shell can

---

[65] See Alliance for the Wild Rockies, 632 F.3d at 1138 (*quoting* Lands
Council v. McNair, 537 F.3d 981, 1005 (9th Cir. 2008) (*en banc*)):
environmental organizations have a "well-established public interest
in preserving nature and avoiding irreparable environmental injury."

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 20
Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 20 of 33

prove.[66] Injunctions affecting First Amendment rights must be narrowly tailored to avoid undue restriction on freedom of speech and lawful comment on important public matters.[67] Here, the buffer zones Shell requests "burden substantially more speech than necessary to achieve [Shell's] asserted interests."[68]

"Given the equitable nature of injunctive relief, courts can tailor a remedy to ensure that it restricts no more speech than necessary."[69] Here, the Court must be vigilant against foregoing options that can serve the purpose of a proposed remedy "without substantially burdening the kind of speech in which . . . [Greenpeace] wish[es] to engage."[70] Applied to this situation, that means . . .

In order for this Court to entertain Shell's request, it must first find that it has the necessary jurisdiction. While the Court has found that it has general jurisdiction, and personal jurisdiction over Greenpeace USA, an Alaska court has no jurisdiction over foreign nationals on a foreign vessel outside US waters. "Once a court has obtained personal jurisdiction over a defendant, the court has the power to enforce the terms of an injunction outside the territorial

---

[66] <u>Schenk v. Pro-Choice Network of Western New York</u>, 519 U.S. 357, 377 (1997).
[67] <u>Id.</u>
[68] <u>McCullen v. Coakley</u>, 134 S.Ct. 2518, 2537 (2014).
[69] <u>Id.</u> at 2538.
[70] <u>Id.</u> at 2537.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
<u>Shell et al. v. Greenpeace et al.</u>
3:15-cv-00054-SLG
Page 21
Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 21 of 33

jurisdiction of the court, including issuing a nationwide injunction; however, when exercising its equitable powers to issue an injunction, a court must be mindful of any effect its decision might have outside its jurisdiction. Courts ordinarily should not award injunctive relief that would cause substantial interference with another court's sovereignty."[71]

Furthermore, any TRO would not be capable of securing an end to the action or prevent further actions by crew of the *Esperanza* prior to entry into US territorial waters. If that is the relief sought by Shell, it is in the wrong court. Under similar circumstances, Cain Energy (a British company) sought and obtained relief in a Dutch Court against Greenpeace International (a Dutch corporation)[72] in response to an action referenced by Shell in its own Complaint.[73] Indeed, Shell, itself, is aware of and has availed itself of the Dutch courts in at least one suit brought against Greenpeace International.[74]

Neither would such an order be enforceable against the activists themselves. Shell is trying to get a TRO against five individuals by suing the employer of one of them. Those five

---

[71] U.S. v. AMC Entertainment, Inc., 549 F.3d 760, 770 (9th Cir. 2008)(internal citations omitted).
[72] http://uk.reuters.com/article/2011/06/09/uk-cairn-idUKTRE7584LS20110609
[73] Complaint, Docket No. 1, at 12 - ¶¶30.a-c.
[74] http://www.greenpeace.org/international/Global/international/publications/climate/2012/Arctic/finaltranslation%20of%20judgment.pdf

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 22

are not able to defend themselves in court, nor are their

respective employers.  Such proposed extra territorial

application of an order on foreign nationals, beyond U.S. soils

is frowned upon, even by Shell.  Indeed, in a speech given by

Peter Rees, Legal Director, Royal Dutch Shell plc:

> If somebody not from your country commits a crime
> against somebody not from your country in another
> country, i.e. not your country, should the courts in
> your country have any jurisdiction over the issue?[75]

Mr. Rees' query was in response to an action brought in <u>Kiobel</u>

<u>v. Royal Dutch Petroleum Co.</u>,[76] while the action was still

pending.  The Supreme Court eventually agreed:

> This Court has generally treated the high seas the
> same as foreign soil for purposes of the presumption
> against extraterritorial application.  Petitioners
> contend that because Congress surely intended the
> [Alien Tort Statute] to provide jurisdiction for
> actions against pirates, it necessarily anticipated
> the statute would apply to conduct occurring abroad.
>
> Applying U. S. law to pirates, however, does not
> typically impose the sovereign will of the United
> States onto conduct occurring within the territorial
> jurisdiction of another sovereign, and therefore
> carries less direct foreign policy consequences.
> Pirates were fair game wherever found, by any nation,
> because they generally did not operate within any
> jurisdiction.  We do not think that the existence of a
> cause of action against them is a sufficient basis for
> concluding that other causes of action under the ATS
> reach conduct that does occur within the territory of

---

[75] http://www.shell.com/global/aboutshell/media/speeches-and-articles/2012/rees-kpmg-forensic-law-lecture-250912.html
[76] 133 S.Ct. 1659 (2013).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 23

another sovereign; pirates may well be a category unto
themselves."[77]

If this court, nonetheless, finds facts sufficiently proven
to warrant exercise of the extreme remedy of injunctive relief,
it must do so by narrowly tailoring the terms of its order to
address or prevent the imminent harm.[78] Here, Shell has
complained of fear of "existing dangerous and unlawful
interference with, and the ongoing imminent threat of continuing
and additional interference with and irreparable harm to,
Shell's 2015 Arctic exploration drilling program and support
vessels" by "Greenpeace."[79] Yet, Shell's claim is not supported
by the facts of the current action. In response to report of
the boarding of the *Blue Marlin/Polar Pioneer* from the vessel,
the U.S. Coast Guard indicated that the vessel did not request
assistance.[80] This is consistent with Greenpeace International's

---

[77] Id. at 1667 (internal citation omitted).
[78] See, e.g., Meinhold v. U.S. Dept. of Defense, 34 F.3d 1469,
1480 (9th Cir. 1994) (An injunction "should be no more
burdensome to the defendant than necessary to provide complete
relief to the plaintiffs.")(*quoting* Califano v. Yamasaki, 442
U.S. 682, 702 (1979) (the scope of injunctive relief should be
dictated by extent of violation established, not by geographical
extent of plaintiff class).
[79] Docket 1 at 1.
[80]

http://www.usnews.com/news/business/articles/2015/04/06/greenpea
ce-activists-board-arctic-offshore-drill-ship ("Petty Officer
Third Class Melissa McKenzie of the Coast Guard's 14th District
in Honolulu confirmed the Coast Guard received word from Blue

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 24
Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 24 of 33

position that those participating have not done anything unsafe or threatening and have not interfered with the operation or movement of vessel in any way. In any event, Greenpeace USA is not responsible for the current action.[81]

Therefore, the scope of relief sought by Shell, seeking to enjoin Greenpeace USA "on the high seas, in the United States Exclusive Economic Zone, in United State navigable and territorial waters and . . . in port[s] within the United States and its territories,"[82] is problematic for this court beyond the territorial waters.[83] The proposed order goes even further, however, to direct removal of the activists aboard the *Polar Pioneer*.[84] Not only does this run up against the "presumption against extraterritorial application" in Kiobel[85], it seeks to order Greenpeace USA regarding something over which it has no power or authority. This Court should reject extension of any order beyond the U.S. territorial seas.

Next, to the extent the proposed order prohibits "breaking into or trespassing . . . . [t]ortiously or illegally interfering with the operation, movement or progress . . .

---

Marlin crew members that a group had boarded the vessel. The office did not receive a request for assistance.")

[81] See generally, Declaration of Daniel Simons.
[82] Docket 8-1 at 2.
[83] See Kiobel, as discussed above.
[84] Docket 8-1 at 6, ¶5.
[85] 133 U.S. at 1667.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 25

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 25 of 33

[b]arricading, blocking or preventing access to or egress from"

Shell's vessels[86], the Court must first find that there is

sufficient proof of actual imminent danger of these sorts of

harm.[87]

> **i.** **The Court should designate the Chukchi Sea and the channels of Shell's staging areas public fora because the public requires a balanced perspective on Shell's drilling activities**

Government property is characterized as one of the

following: (1) a traditional public forum, (2) a designated

public forum, (3) a limited public forum, or (4) a nonpublic

forum.[88] Only by designating the coastal waters of the Chukchi

Sea and the channels of Shell's staging areas public fora, and

allowing Greenpeace USA to monitor Shell, can the Court

equitably balance public discourse on Shell's oil drilling

activities.

---

[86] Docket 8-1 at 4, ¶¶ 2.a – d.

[87] An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation. See, e.g., Lineback v. Spurlino Materials, LLC, 546 F.3d 491, 504 (7th Cir.2008) (noting that an injunction is overbroad if it results in a "likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful"); e360 Insight v. Spamhaus Project, 500 F.3d 594, 604 (7th Cir.2007), (vacating injunction that "fail[ed] to comply with the rule requiring courts to tailor injunctive relief to the scope of the violation found" (internal quotation marks omitted)).

[88] Wright v. Incline Village General Improvement Dist., 665 F.3d 1128, 1134 (9th Cir. 2011).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 26
Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 26 of 33

Traditional public forums are government properties that "by long tradition or by government fiat have been devoted to assembly and debate," such as public streets and parks.[89]  The proper analysis for a challenge to an ordinance that restricts speech in a public forum is whether the restriction is a valid time, place, and manner restriction on speech.[90]

A designated public forum is government property that has not traditionally been regarded as a public forum [but] is intentionally opened up for that purpose.[91]  Governments designate public fora to channel communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects.[92] Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum.[93]

A limited public forum is "limited to use by certain groups or dedicated solely to the discussion of certain subjects."[94]

---

[89] Id. (*quoting* Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 802 (1985)).
[90] Id. (*quoting* Klein v. San Diego Cnty, 463 F.3d 1029, 1034 (9th Cir. 2006)).
[91] Id. (*quoting* Christian Legal Soc'y Chapter of the Univ. of Cal. Hastings Coll. of the Law v. Martinez, 130 S.Ct at 2984 n. 11(2010)) (internal quotations omitted).
[92] Cornelius, 473 U.S. at 802 (1985).
[93] Wright, 665 F.3d at 1134 (*quoting* Pleasant Grove City v. Summum, 555 U.S. 460, 469-70 (2009))(internal quotations omitted).
[94] Id. (*quoting* Pleasant Grove City, 555 U.S. at 470)(internal quotations omitted).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 27

Government-imposed restrictions on speech in limited public fora must be reasonable and viewpoint-neutral.[95]

A nonpublic forum is government property that does not by "tradition or designation[] serve as a forum for public communication."[96] "Content-based restrictions in nonpublic for a need only be reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."[97]

The coastal waters of the Chukchi Sea and the channels of Shell's staging areas must be designated public fora so that the United States public and the international community can adequately assess Shell's drilling activities. The Obama Administration recently proposed the most sweeping Alaskan Wilderness Protection Legislation in decades on the lands contained between Chukchi and Beaufort seas.[98] Shell's drilling activities present real dangers that warrant the presence of Greenpeace to observe and monitor.

Shell's track record thus far in the offshore Arctic reads like a string of mishaps. On 15 July 2012, the *Noble Discoverer*

---

[95] <u>Id.</u> (*citing* <u>Pleasant Grove City</u>, 555 U.S. at 470).
[96] <u>Id.</u> (*quoting* <u>Preminger v. Peake</u>, 552 F.3d 757, 765 (9th Cir. 2008)) (internal quotations omitted).
[97] <u>Id.</u> (*quoting* <u>Preminger</u>, 552 F.3d at 765)(internal quotations omitted).
[98] http://news.nationalgeographic.com/news/2015/01/150125-arctic-wilderness-conservation-environment-energy/

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 28

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 28 of 33

drifted very near land in Unalaska Bay.[99]  Although Shell denied
the rig had run aground, photos of the incident appear to
contradict that denial.[100]  On 17 September 2012, Shell had to
abandon plans to drill to a depth where oil could be found
because a key oil-spill device was severely damaged during at-
sea testing.[101] The Bureau of Safety and Environmental
Enforcement described the so-called containment dome as ending
up "crushed like a beer can."[102]  On 18 November 2012, a fire
broke out on the *Noble Discoverer* after an explosion on the rig;
Shell described this as a "common backfire."[103]  All these
incidents occurred before the *Kulluk* ran aground on Sitkaladik
Island on 31 December 2012.  Thereafter, authorities found
numerous criminal violations aboard the *Noble Discoverer*,
resulting in an unprecedented prosecution of Shell's major
contractor.   We currently entrust Shell to drill for oil
without any independent presence there to observe them.  We do
this despite the likelihood of a major oil spill.  The Bureau of
Ocean Energy Management (BOEM) quantified the risk of an oil
spill of over 1,000 barrels of oil occurring in the Chukchi Sea,

---

[99] http://www.adn.com/article/shell-offshore-drilling-vessel-noble-
discoverer-drifts-near-shore-unalaska
[100] Id. See 42.
[101] http://www.theguardian.com/business/2012/sep/17/shell-postpones-
arctic-drilling-next-year
[102] Id. See 45.
[103] http://www.reuters.com/article/2012/11/17/us-shell-ship-fire-
idUSBRE8AG01W20121117

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 29
Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 29 of 33

in a scenario where its estimated recoverable resources (4.3 billion barrels) are produced over a period of 77 years.[104] BOEM found that "[t]wo large spills of crude, condensate, or refined oil are assumed to occur during the Development and Production phases[;] . . . [that] there is a 75% chance of one or more large spills occurring over the 77 years of the Scenario, and a 25% chance of no spills occurring."[105] BOEM additionally estimates that "[a]bout 750 small crude and refined spills could occur during Development and Production."[106]

It is against this backdrop that Greenpeace USA requests, in good faith, that the Court designate the Chukchi Sea and the channels of Shell's staging areas public fora. Indeed, as Shell has made it abundantly clear that its preparatory efforts for a drilling season extend far beyond and long before the actual drilling activities, the same recognition should apply to the public's interest and GP's right to observe/comment on/protest those activities.

The U.S. government is either unwilling or unable to observe and monitor Shell's activities in these waters. In lieu of a direct government presence observing Shell, the public is

---

[104]

http://www.boem.gov/uploadedFiles/BOEM/About_BOEM/BOEM_Regions/Alaska_Region/Leasing_and_Plans/Leasing/Lease_Sales/Sale_193/2015_0127_LS193_Final_2nd_SEIS_Vol1.pdf

[105] Id. See 48.

[106] Id.

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 30

without a balanced perspective of Shell's conduct. This lack of objectivity allows Shell to spin in its favor all of its further mishaps, which are statistically bound to occur. Without an observer like Greenpeace USA in the Chukchi Sea or areas where drilling-related activities or preparations occur, the public will have no other manner of interpreting these events until, perhaps, the completion of a lengthy investigation. That could take years. Indeed, without the courage and assistance of a whistleblower, the crimes aboard the *Noble Discoverer* may never have come to light. With Greenpeace USA's presence, however, a credible, balanced report could be generated instantaneously.

This type of instantaneous communication, moreover, parallels the bedrock principals underlying the traditional public fora of sidewalks, streets, and parks. These fora have traditionally been especially important locales for communication among the citizenry. They "have immemorially been held in trust for the use of the public and, time out of mind, have been used for assembly, communicating thoughts between citizens, and discussing public questions."[107]

Here, the Chukchi Sea is akin to a public park; indeed, part of it is a national park. The Chukchi's pristine nature,

---

[107] <u>Berger v. City of Seattle</u>, 569 F.3d 1029, 1036 (9th Cir. 2009) (*quoting* <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1204-05 (9th Cir. 1994)).

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
<u>Shell et al. v. Greenpeace et al.</u>
3:15-cv-00054-SLG
Page 31

its minerals, and its habitat are held in trust for the use of all the United States citizenry to enjoy.  But unlike a traditional public park, the remoteness of the Chukchi Sea renders it difficult for the general population to access.  This remoteness doubtlessly contributes in no small way to the general public's collective imagination of this area as a nature preserve.  The waters through which Shell stages its oil drilling projects are generally no less remote, and certainly no less worthy of protection.

Our contemporary technical world of instantaneous global communication, however, renders this remoteness meaningless on a constitutional free speech level.  But the importance of the Chukchi Sea requires a balanced perspective.  Such a perspective can only be achieved by allowing Greenpeace USA to observe and monitor Shell's drilling activities.  This, in turn, requires designating the Chukchi Sea a public forum and according it the same protections provided to traditional public fora.

## Conclusion

This Court should deny Shell's Motion for Temporary Restraining Order at Docket 8.

/

/

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 32
Case 3:15-cv-00054-SLG  Document 28  Filed 04/09/15  Page 32 of 33

DATED this 9th day of April 2015.

                            HOZUBIN, MOBERLY, LYNCH & ASSOCIATES
                            Attorneys for Defendant
                            Greenpeace, Inc., a California corporation

                            By:    /s/ Michael A. Moberly
                            Michael A. Moberly, Esq.
                            711 M Street, Suite 2
                            Anchorage, AK 99501
                            Telephone: 907-276-5297
                            Facsimile: 907-276-5291
                            E-mail: mike@akdefenselaw.com
                            Alaska Bar No. 9612073

CERTIFICATE OF SERVICE
I hereby certify that on the
9th day of April, 2015, a true
and correct copy of the foregoing
was ELECTRONICALLY served on:

Jeffrey W. Leppo, Esq.
Ryan P. Steen, Esq.
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101


HOZUBIN, MOBERLY, LYNCH & ASSOCIATES

By: /s/ Michael A. Moberly
9100/537/plead/Opp to Mtn for TRO FINAL

Opposition to Motion for Temporary Restraining Order and Preliminary Injunction
Shell et al. v. Greenpeace et al.
3:15-cv-00054-SLG
Page 33

Case 3:15-cv-00054-SLG   Document 28   Filed 04/09/15   Page 33 of 33