IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHELL OFFSHORE, INC., a Delaware corporation, and SHELL GULF OF MEXICO INC., a Delaware corporation,<br><br>                        Plaintiffs,<br>     v.<br>GREENPEACE, INC., a California corporation, and JOHN and JANE DOES 1-20,<br><br>                        Defendants. | Case No. 3:15-cv-00054-SLG |

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

      Plaintiffs Shell Offshore, Inc. and Shell Gulf of Mexico, Inc. (collectively "Shell") filed a Motion for a Temporary Restraining Order and a Preliminary Injunction on April 8, 2015.[1] After a hearing on April 10, 2015 at which both Shell and Greenpeace, Inc. ("Greenpeace USA") participated, this Court entered a Temporary Restraining Order ("TRO") on April 11, 2015 which enjoined Greenpeace USA and those acting in concert with it from engaging in certain illegal or tortious acts against three vessels, the *Blue Marlin*, the *Noble Discoverer*, and the *Polar Pioneer*, an arctic drilling vessel that had been loaded on the *Blue Marlin*.[2] The TRO also established safety zones around each of those vessels.

---

[1] Docket 17 (Preliminary Injunction Mot.).

[2] Docket 34 (Order re TRO).

The TRO was initially set to expire on April 28, 2015.[3] A hearing on the Motion for Preliminary Injunction was held on April 28, 2015. At that time, the Court extended the TRO until May 9, 2015 or until the Court's determination of the Motion for a Preliminary Injunction.[4]

Each party called witnesses to testify at the preliminary injunction hearing. Shell called David George and Michael John Battle IV; Greenpeace called Mary Sweeters. Each party also filed numerous declarations and exhibits. At the conclusion of the hearing, the Court took the matter under advisement. This is the second time a case between Shell and Greenpeace USA has come before this Court in which Shell seeks preliminary injunctive relief to prevent Greenpeace USA from committing tortious or illegal acts against its drilling fleet.[5]

## DISCUSSION

As a preliminary matter, there is currently pending before the Court a motion recently filed by Greenpeace USA that seeks to dismiss this action. The motion argues, among other points, that the Court lacks subject matter jurisdiction.[6] However, the Court finds that it has subject matter jurisdiction to issue a preliminary injunction in this dispute between two U.S. corporations, including one that is applicable on the high

---

[3] Docket 34 (Order re TRO) at 11.

[4] *See generally* Federal Rule of Civil Procedure 65(b)(2). *See also* Docket 87 (Order Extending Temporary Restraining Order). Civil Rule 65 permits courts to enter TRO's for up to 28 days; thereafter, a preliminary injunction may be entered.

[5] *See* Case No. 3:12-cv-00042-SLG; *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281 (9th Cir. 2013).

[6] Docket 99 (Mot. to Dismiss) (filed May 4, 2015).

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 2 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 2 of 19

seas.[7] Greenpeace USA's motion to dismiss is not currently ripe; an order explaining the basis for the Court's determination that it has subject matter jurisdiction will be issued after that pending motion has been fully briefed.[8] Also pending before the Court are several motions to admit, limit, or exclude certain evidence.[9] Not all of those motions are ripe, and a separate order will also be later issued that addresses each of those motions.

Plaintiffs seeking preliminary injunctive relief must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[10] "Under the 'sliding scale' approach to preliminary injunctions observed in [the Ninth Circuit], 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'"[11] But in any event, even with the sliding scale approach, "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to

---

[7] *See* 28 U.S.C. § 1332; 43 U.S.C. § 1349(b)(1); *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1288 (9th Cir. 2013) (finding subject matter jurisdiction for preliminary injunction between these parties).

[8] Shell filed its opposition to Greenpeace's Motion to Dismiss earlier today, on May 8, 2015, at Docket 106.

[9] *See* Dockets 16, 44, 66 (motions for judicial notice); Dockets 84, 88 (motions to strike). Greenpeace USA filed its Reply to Docket 84 late yesterday, on May 7, 2015.

[10] *Sierra Forest Legacy v. Ray*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

[11] *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). *See also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (2011) (discussing post-*Winter* circuit split over continuing viability of the sliding scale approach and joining the Seventh and Second Circuits in retaining it).

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 3 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 3 of 19

obtain a preliminary injunction."[12] Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[13]

The Court previously assessed these factors in this case when granting Shell's motion for a Temporary Restraining Order with respect to three of the vessels.[14] The record now before the Court is considerably more developed. Shell now seeks injunctive relief as to 29 vessels and certain other property for the entire 2015 Arctic drilling season. This Order is based on the testimony and documentary evidence presented by both parties and the arguments of counsel regarding the Motion for Preliminary Injunction, except as the Court indicates it has specifically excluded by separate order. Upon consideration of that record, the Court finds as follows:

1. *The likelihood of success on the merits*

This requirement for preliminary injunctive relief is met if the Court finds that Shell has stated at least one claim in its Complaint on which it is likely to succeed. Shell's Complaint includes a claim for trespass and trespass to chattels, among other claims. In *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers* the Fifth Circuit recognized trespass as a viable claim in a maritime context. There, that circuit held "that general common law and in particular the Restatement (Second) of Torts should

---

[12] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original). In *Winter*, the Supreme Court held that the *possibility* of injury is not enough; the movant must, at a minimum, demonstrate the *likelihood* of irreparable injury in the absence of an injunction. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008)

[13] *Sierra Forest*, 577 F.3d at 1022 (citing *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

[14] Docket 34 (Order re TRO) (filed April 11, 2015).

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 4 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 4 of 19

control to determine the law of maritime trespass, in order to promote uniformity in general maritime law."[15] Under the Restatement, one is subject to liability for trespass to chattels by intentionally intermeddling with property in the possession of another.[16] And while a showing of actual trespass may be required in order to recover damages, the Restatement makes clear that in appropriate cases, injunctive relief may be ordered for torts that are only threatened and have not actually occurred.[17] As noted above, Greenpeace USA has recently filed a motion to dismiss all of Shell's claims, including its trespass claim, pursuant to Civil Rule 12(b)(6).[18] That motion is not yet ripe. But in light of the impending expiration of the TRO, the Court will examine at this time whether Shell is likely to succeed on the merits of its trespass claim for purposes of preliminary injunctive relief.

As noted above, the law recognizes that a party may seek injunctive relief to prevent threatened illegal or tortious conduct. To obtain such injunctive relief, plaintiffs must show themselves to be

> under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.[19]

---

[15] 959 F.2d 49, 53 (5th Cir. 1992).

[16] *See generally* REST. 2D TORTS §§ 216–22.

[17] *See* REST. 2D TORTS § 933.

[18] Docket 99 (Mot. to Dismiss) (filed May 4, 2015).

[19] *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009); *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1288-89 (9th Cir. 2013).

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 5 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 5 of 19

Here, Shell has submitted persuasive evidence that it is under a strong threat of future trespasses by Greenpeace USA in the near term. Perhaps the best evidence of that fact is that a Greenpeace USA employee was among the six activists that recently climbed aboard a Shell-contracted vessel, the *Polar Pioneer*, and that, according to the testimony of Ms. Sweeters, Greenpeace USA's Arctic campaigner, Greenpeace USA was involved in the selection of that activist for that boarding. In addition, Ms. Sweeters testified at the preliminary injunction hearing that currently one of Greenpeace USA's primary campaigns is its "Save the Arctic" campaign, which has among its goals that no oil drilling occur in the Arctic. Ms. Sweeters also testified that one of the methods that Greenpeace USA uses to try to achieve its goals is nonviolent direct action, including illegal activity. And Ms. Sweeters acknowledged that Greenpeace USA has singled out Shell as its key target this summer in order to halt drilling in the Arctic.[20] Based on the evidence presented, the Court finds that there is a strong likelihood that Greenpeace USA will attempt to again trespass against Shell's Arctic operations while Shell is preparing to be and/or when it is in the Chukchi Sea this summer.

Greenpeace USA has asserted that Shell is not likely to succeed on the merits of a trespass claim because Shell does not own or operate all of the vessels from which it seeks to enjoin Greenpeace USA.[21] In response, Shell asserts that it "has a clear property interest in all of the vessels," all of which are "either 'on hire' to Shell or have

---

[20] Docket 90 (Transcript) at 202.

[21] Docket 59 (Opp'n) at 23-24.

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 6 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 6 of 19

fully executed contracts that will bring them on hire shortly."[22] The Court is persuaded that Shell's interest in the vessels during the time they are under contract to Shell creates a sufficient interest for preliminary injunctive relief as to threatened future trespasses when the contracts are in effect.[23]

   *2. The likelihood of irreparable harm in the absence of preliminary relief*

A party seeking injunctive relief must also demonstrate the likelihood of irreparable harm in the absence of an injunction. "[I]f plaintiff either can bring a legal action and seek damages that will compensate him fully, or if plaintiff can assert his claim as a defense in some other proceeding, the alternative remedy is adequate,"[24] and equitable relief should be denied. However, "[t]he mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'"[25] Particularly where, as here, the amount of economic harm would be difficult to measure if Greenpeace USA prevailed in its efforts to disrupt or stop Shell from proceeding with its 2015 Arctic drilling plans, injunctive relief may be warranted.[26]

Moreover, if Greenpeace USA continues with its planned tortious or illegal disruption of Shell's Arctic drilling operations planned for this summer, there is a significant risk to the safety of Shell's personnel, including its contractors (as well as the safety of Greenpeace USA activists), which is a type of irreparable harm for which there

---

[22] Docket 75 (Reply) at 11-12. *See also* Docket 11 (Battle Decl.) at ¶ 5; Docket 41 (George Decl.) at ¶ 3.

[23] *See* REST. 2D TORTS § 216.

[24] WRIGHT & MILLER § 2944.

[25] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

[26] *See Continental Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1105 (9th Cir. 1994).

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 7 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 7 of 19

is no adequate remedy at law.[27] Greenpeace USA points to the fact that no one was injured when the six activists climbed onto the *Polar Pioneer* in the middle of the Pacific Ocean last month as demonstrative of a low likelihood of future irreparable harm. The Court disagrees. Rather, in the Court's view, the fact that no one was injured on that one occasion was quite fortuitous and does not serve to counter the clear risk of harm that is posed when individuals are scaling uninvited onto a vessel in the middle of the ocean or onto a drilling rig in the Chukchi Sea. Indeed, as the Ninth Circuit held on appeal from the previous case involving similar conduct by Greenpeace USA, it is "too plain for debate that such tactics at minimum pose a serious risk of harm to human life, particularly if attempted in the extreme conditions of the Arctic Ocean, and that such harm could find no adequate remedy at law."[28]

Greenpeace USA also asserts that Shell cannot demonstrate an irreparable injury because "its drilling permit still has not been issued, its plans are contingent, and legal certainty has not been achieved."[29] While this argument may have some merit as to Shell's potential economic injury, Greenpeace's recent actions, as noted above, already pose a serious risk of harm to human life while Shell's fleet is mobilizing.

Greenpeace USA also asserts that there is an adequate remedy at law for Shell because of the Coast Guard regulations that have created safety zones around Shell's primary vessels. But the Court is unpersuaded that the Coast Guard's regulations

---

[27] *See, e.g., Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F. Supp. 1249, 1266 (N.D. Iowa 1995); *Texaco Indep. Union of Coraopolis Terminal v. Texaco, Inc.*, 452 F. Supp. 1097, 1107 (W.D. Pa. 1978).

[28] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013).

[29] Docket 59 (Opp'n) at 28 (internal quotation marks omitted).

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 8 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 8 of 19

would eliminate the likelihood of irreparable harm to Shell in the absence of preliminary injunctive relief, particularly since Greenpeace USA has made clear that it will undertake illegal and tortious activity in an effort to achieve its goals, which the Court finds could well include the violation of Coast Guard safety zone regulations. Moreover, as the experience from 2012 demonstrates when a similar Preliminary Injunction was in place, the Court finds that preliminary injunctive relief will likely prevent such threatened tortious and/or illegal activity from occurring.

In sum, based on the record before the Court, Shell has demonstrated a likelihood of irreparable harm in the absence of preliminary injunctive relief.

*3. The balance of the equities*

The third requirement that a moving party must show in order to obtain a preliminary injunction is that the balance of equities tips in its favor.

To the extent that Greenpeace USA's interests are to engage in illegal or tortious activities, the balance of equities clearly weighs in favor of Shell.[30] And yet Greenpeace USA's members certainly have a First Amendment right to protest vigorously against Shell's planned drilling activity, so long as such protest is done in a manner consistent with the law. The Court acknowledges that the establishment of safety zones in a preliminary injunction that limits Greenpeace USA from approaching too close to Shell's vessels could have an impact on Greenpeace USA's otherwise legal activities. But where Greenpeace USA has demonstrated and testified that it turns to illegal and

---

[30] *See, e.g., Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (affirming the Court's preliminary injunction order "in light of the serious risk to human life and property posed by the conduct that the preliminary injunction enjoins, and given the narrow tailoring of the order.").

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 9 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 9 of 19

tortious conduct to spread its message, the establishment of reasonable safety zones aimed at addressing that threatened conduct is nonetheless warranted.

And while the Court will establish certain safety zones, the Court will also accord to Greenpeace USA the opportunity to seek by motion an order that would permit it to legally and non-tortiously go inside the safety zones to observe specified drilling rigs or other operations at such specified times as the Court may order. At the preliminary injunction hearing, Greenpeace USA asserted that such an approach would be unduly burdensome to it because of the time and expense associated with going to court every time it sought to go within the safety zones But the Court finds that in light of the boarding of the *Polar Pioneer* in April 2015, Greenpeace USA's stated plans for the summer of 2015 to "Stop Shell," and its stated intent to use illegal conduct to achieve its goals, this type of approach will best insure the safety of all involved persons and property while according to Greenpeace USA the opportunity to engage in legal and non-tortious activity closer to Shell's vessels so as to permit Greenpeace USA to share its message from that location should it elect to do so.[31]

   *4. The injunctive relief must be in the public interest*

"The public interest analysis for the issuance of a preliminary injunction requires us to consider whether there exists some critical public interest that would be injured by

---

[31] *See Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) ("The safety zones do not prevent Greenpeace USA from communicating with its target audience because, as the district court observed, Greenpeace USA has no audience at sea. . . . Speech is, of course, most protected in such quintessential public fora as the public sidewalks surrounding abortion clinics. . . . But the high seas are not a public forum, and the lessons of *Schenck* [*v. Pro-Choice Network of W.N.Y.*, 519 U.S. 357 (1997)] have little applicability there.").

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 10 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 10 of 19

the grant of preliminary relief."[32] The public interest is not disserved by an injunction that precludes illegal or tortious conduct.[33] And for much the same reason that the Court has concluded that the balance of equities tips in favor of preliminary injunctive relief, the Court concludes that so long as the scope of injunctive relief is narrowly tailored, the impact on Greenpeace USA's legitimate interests in monitoring and legally protesting Shell's activities can be minimized.[34]

*Scope of the Preliminary Injunction*

Shell has sought to have safety zones established around each of its contracted vessels for the Arctic season when they are in transit and when they are in the Chukchi Sea. The Court finds that the in-transit safety zone in the Puget Sound area should correspond to the 500-yard safety zones that have been established there by Coast Guard regulation so as to facilitate the administration of the Coast Guard regulations as well as the enforcement of this Order. The Court finds that having a 500-yard Coast Guard safety zone for Shell and the public as a whole in regulations, and a different 500-meter (or, as Shell requests for some vessels, a 1000-meter) in-transit safety zone in a preliminary injunction for Greenpeace USA and those in concert with it, in the

---

[32] *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1114-15 (9th Cir. 2010), *vacated on other grounds and remanded sub nom. Douglas v. Ind. Living Ctr. of Southern California, Inc.*, --- U.S. ---, 132 S. Ct. 1204 (2011) (citation omitted).

[33] *See, e.g., Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291-92 (9th Cir. 2013).

[34] *See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981; *Schenck v. Pro-Choice Network of Western New York,* 519 U.S. 357, 377 (1997); *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291-92 (9th Cir. 2013).

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 11 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 11 of 19

densely-populated Puget Sound area would be potentially confusing and not be in the public interest.[35]

With respect to the proposed safety zones outside of Puget Sound, Shell has demonstrated through the testimony of David George that its proposed safety zones for each of the vessels are warranted. In particular, Mr. George's testimony adequately explained why the Coast Guard's safety zone regulations, which are aimed at ensuring safe waterways for all users, do not adequately meet Shell's need for injunctive relief from Greenpeace USA—an entity that is not trying to safely navigate around or legally protest Shell-contracted vessels but is instead trying to climb aboard vessels and otherwise "Stop Shell" from undertaking its Arctic operations.[36]

Specifically as to the towing safety zones, Mr. George stated in his declaration that the

> potential danger [of collision with a Greenpeace vessel] is compounded when the transiting vessel is under tow because the length of the towline and speed of the vessels restrict their ability to maneuver, including stopping, which can be hampered if the towing/towed vessels are prevented from executing the operation in a a safe and efficient manner. If sudden evasive action is taken by the towing vessel, perpendicular forces can overstrain the towing equipment and result in capsize of the tug. This 'pendulum effect' can render the towed vessel temporarily uncontrolled, increasing the risk of collision, potential damage from broadside seas, and if in confined water, grounding.[37]

---

[35] *See* Safety Zones and Regulated Navigation Area; Shell Arctic Drilling/Exploration Vessels and Associated Voluntary First Amendment Area, Puget Sound, WA, 80 Fed. Reg. 081 (Apr. 28, 2015). There is far less boat traffic in the Chukchi Sea or the Arctic Ocean than in Puget Sound, so there is less difficulty in having two different-sized safety zones in force in those areas.

[36] *See* Docket 90 (Transcript) at 46-48, 69-73.

[37] Docket 12 (George Decl.) at ¶ 19.

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 12 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 12 of 19

Likewise, Mr. George's declaration adequately demonstrates that Shell's proposed 1500 meter safety zones for the *Polar Pioneer* and the *Noble Discoverer* are appropriate at Arctic drilling locations during anchoring and other drilling operations in the Chukchi Sea.[38]  Specifically, Mr. George states that "[t]he drilling of exploration wells by the *Noble Discoverer* and *Polar Pioneer* requires the placement of a carefully coordinated and planned anchoring system involving 8 anchors, weighing approximately 15 tons each, installed in a circular formation around the drillship/MODU at an approximately 1000 meter radius."[39]  Mr. George adds that "[e]ffective and safe implementation of Shell's Ice Management Plan requires that a significant area around the drillship/MODU remains free and clear of any vessels not involved with the drilling operation.[40]

The Court is aware that Greenpeace USA takes issue with the expertise of Shell's witnesses on the appropriate size of safety zones.[41]  Greenpeace USA argues that the Court should instead rely upon the expertise of the Coast Guard if safety zones are to be included at all in a preliminary injunction around the vessels.  But the Court finds that a safety zone designed by the Coast Guard to insure safe navigation of the general public presents very different considerations than a safety zone aimed at precluding illegal and tortious conduct by Greenpeace USA.  However, Greenpeace USA (or Shell, for that matter) may seek by motion to revisit the appropriate size of the

---

[38] *See* Docket 12 (George Decl.) at ¶¶ 23-45.

[39] Docket 12 (George Decl.) at ¶ 25.

[40] Docket 12 (George Decl.) at ¶ 38; *see also id.* at ¶¶ 36-37.

[41] Implicit in this Order is the Court's denial of Greenpeace USA's Motion to Strike Opinion Testimony of Mr. George and Mr. Lee at Docket 84, which, as noted above, the Court will explain in a separate future order.

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 13 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 13 of 19

safety zones as set forth herein (including the airspace safety zone) at any time during the term of the Preliminary Injunction for good cause shown.

## CONCLUSION

For the foregoing reasons, Shell's Motion for a Preliminary Injunction is GRANTED and IT IS ORDERED as follows:

1. This Order, effective immediately except as specifically noted below as to certain vessels and facilities, applies to each of the following:

    a. To the vessels listed below when located on the high seas, in the United States Exclusive Economic Zone, in United States navigable and territorial waters, and when located in port within the United States and its territories:

        i. *Polar Pioneer*
        ii. *Noble Discoverer*
        iii. *Nordica*
        iv. *Fennica*
        v. *Arctic Challenger* (effective 6/15/15)
        vi. *Corbin Foss* (effective 6/15/15)
        vii. *Aiviq*
        viii. *Lauren Foss* (effective 5/15/15)
        ix. *Tuuq* (effective 5/15/15)
        x. *Ross Chouest*
        xi. *Harvey Champion*
        xii. *Harvey Supporter*
        xiii. *Ocean Wind*
        xiv. *Ocean Wave*
        xv. *Harvey Sisuaq*
        xvi. *Harvey Explorer*
        xvii. *American Trader* (effective 5/8/15)
        xviii. *Nanuq*
        xix. *Barbara Foss* (effective 5/8/15)
        xx. *Tor Viking II* (effective 5/15/15)
        xxi. *Guardsman*
        xxii. *Sea Prince*
        xxiii. *Montana* (effective 6/15/15)

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 14 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 14 of 19

      *xxiv.* *Klamath*
      *xxv.* *Arctic Endeavour*
      *xxvi.* *Unalaq*
      *xxvii.* *Benjamin Foss* (effective 5/20/15)
     *xxviii.* *King C*
      *xxix.* *Marika* (effective 5/30/15)

   *b.* To all buoy and anchor systems placed within the United States Exclusive Economic Zone of the Chukchi Sea for the *Polar Pioneer* and the *Noble Discoverer*.

   *c.* Beginning June 25, 2015, to the Ravn Alaska hangars and ramp lots 2A, 3C, 4A Block 100, and the old Era Alaska passenger terminal Lot 4 Block 300, located at Wiley Post Will Rodgers Memorial Airport, 1751 Ahkovak St., Barrow, Alaska.

2. With respect to each of the above-described vessels, property, and facilities, Greenpeace, Inc. (also known as Greenpeace USA) and its officers, agents, servants, employees, and attorneys, and all others who are in active concert or participation with Greenpeace, Inc. (also known as Greenpeace USA) and/or its officers, agents, servants, employees, and attorneys, (collectively "Greenpeace"), who receive actual notice of this Order by personal service or otherwise, are enjoined from:

   a. Breaking into or trespassing on the vessels, property, and facilities;

   b. Tortiously or illegally interfering with the operation, movement or progress of the vessels, property, and facilities;

   c. Barricading, blocking, or preventing access to or egress from the vessels, property, and facilities; and

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 15 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 15 of 19

d. Tortiously or illegally endangering or threatening any employee, contractor or visitor of Shell or any of its affiliates who is present on, or as they enter or exit, the vessels, property, or facilities.

3. Greenpeace, Inc. (also known as Greenpeace USA) and its officers, agents, servants, employees, and attorneys, and all others who are in active concert or participation with Greenpeace, Inc. (also known as Greenpeace USA) and/or its officers, agents, servants, employees, and attorneys, (collectively "Greenpeace"), who receive actual notice of this Order by personal service or otherwise, are enjoined from entering the safety zones established by paragraph 4 of this Order.

4. The following safety zones are established:

   a. From the date of this Order until October 31, 2015, *while in transit*: (1) on the high seas, (2) in the United States Exclusive Economic Zone, and (3) in U.S. navigable and territorial waters, around the following vessels (including surface and subsurface areas):

      i. *Noble Discover*: 1000 meters (m).

      ii. *Polar Pioneer*: 1000 m.

      iii. *Nordica*: 500 m.

      iv. *Fennica*: 500 m.

      v. *Tor Viking II*: 500 m.

      vi. *Ross Chouest*: 500 m.

      vii. *Harvey Explorer*: 500 m.

      viii. *Harvey Champion*: 500 m.

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 16 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 16 of 19

ix. *Harvey Supporter*: 500 m.

x. *Harvey Sisuaq*: 500 m.

xi. *Aiviq*: 500 m; 1000 m when towing.

xii. *Nanuq*: 500 m.

xiii. *Guardsman*: 500 m; 1000 m when towing.

xiv. *Ocean Wind*: 500 m; 1000 m when towing.

xv. *Ocean Wave*: 500 m; 1000 m when towing.

xvi. *Corbin Foss*: 500 m; 1000 m when towing.

xvii. *Lauren Foss*: 500 m; 1000 m when towing.

xviii. *Barbara Foss*: 500 m; 1000 m when towing.

xix. *Sea Prince*: 500 m; 1000 m when towing.

xx. *Montana*: 500 m; 1000 m when towing.

xxi. *Klamath*: 500 m; 1000 m when under tow.

xxii. *Arctic Challenger*: 500 m; 1000 m when under tow.

xxiii. *Arctic Endeavour*: 500 m; 1000 m when under tow.

xxiv. *Tuuq*: 500 m; 1000 m when under tow.

xxv. *Unalaq* (landing craft): 500 m.

xxvi. *American Trader*: 500 m; 1000 m when towing.

xxvii. *Benjamin Foss*: 500 m.

xxviii. *King C* (crew boat): 500 m.

xxix. *Marika* (resupply tanker): 1000 m.

b. The safety zones set forth above in subparagraph (a) shall instead be **500 yards** for each of the above-listed vessels *while in transit* in the U.S.

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 17 of 19

Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 17 of 19

Territorial and Internal Waters of those waters under the jurisdiction of the Captain of the Port Zone **Puget Sound**.

    c. The safety zones set forth above in both subparagraphs (a) and (b) shall instead be 100 meters for each of the above-listed vessels when transiting through narrow channels designated as piloted waters.

    d. From July 1, 2015 through October 31, 2015, at drilling locations, during drilling operations and while completing drilling operations, when upon U.S. navigable and territorial waters and upon waters within the United States Exclusive Economic Zone in the Chukchi Sea, the safety zones for the *Polar Pioneer* and the *Noble Discoverer* shall be 1500 meters (including surface and subsurface areas).

    e. From June 25, 2015 through October 31, 2015, in the airspace to an elevation of 3,000 feet above ground level and in a 0.5 nautical mile radius from (a) the *Noble Discoverer*, *Polar Pioneer*, *Nordica*, *Fennica*, *Sisuaq*, and *Aiviq* (i.e., all helideck-equipped vessels) at all times; and (b) all other vessels while helicopter hoisting is being conducted at that vessel.

5. Greenpeace USA shall not operate any drones anywhere within the Burger Prospect in the Chukchi Sea from June 25, 2015 through October 31, 2015, except as established by Order of the Court upon motion that includes a proposed plan for such drone use by Greenpeace USA and after each party has been accorded an opportunity to be heard regarding such proposed plan.

6. Pursuant to this Court's Temporary Restraining Order, Shell has deposited with the Clerk of Court a cash bond in the amount of Five Thousand Dollars

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 18 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 18 of 19

($5,000.00). Shell shall maintain the deposited cash bond for purposes of this Preliminary Injunction.

7. This Preliminary Injunction is effective as of the date of this Order and shall remain in effect until October 31, 2015 unless modified by further order of this Court. Greenpeace USA may by motion seek to modify this Preliminary Injunction so as to permit Greenpeace USA to more closely monitor Shell's activities within the safety zones established by this Preliminary Injunction at such specific times, locations, and conditions that this Court may order after each party has been accorded an opportunity to be heard on any such motion.

DATED at Anchorage, Alaska, this 8th day of May, 2015.

*/s/ Sharon L. Gleason*
United States District Judge

3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order Granting Motion for Preliminary Injunction
Page 19 of 19
Case 3:15-cv-00054-SLG   Document 111   Filed 05/08/15   Page 19 of 19