# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

SHELL OFFSHORE, INC., a Delaware
corporation, and SHELL GULF OF
MEXICO INC., a Delaware corporation,

                    Plaintiffs,

     v.

GREENPEACE, INC., a California
corporation, and JOHN and JANE DOES
1-20,

                   Defendants.

Case No. 3:15-cv-00054-SLG

---

## ORDER RE MOTION TO DISMISS

On May 4, 2015, Greenpeace, Inc. ("Greenpeace USA") filed a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] The motion has been fully briefed. Oral argument was not requested and was not necessary to the Court's decision.

As a preliminary matter, the Court notes that Greenpeace USA has filed a notice of appeal of the Court's May 8, 2015 Order Granting Motion for Preliminary Injunction.[2] As a general rule, "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed."[3] But "[t]he principle of exclusive appellate jurisdiction, is not, however, absolute. The district court retains jurisdiction during the

---

[1] Docket 99 (Motion).

[2] *See* Dockets 111, 114.

[3] *Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).

pendency of an appeal to act to preserve the status quo."[4]   Accordingly, a district court may deny a motion for relief on an issue that is being appealed or it may state that it would grant the motion if the court of appeals remanded the case to the district court for that purpose.[5]

## I.    Statutory Bases of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to seek dismissal of a complaint for lack of subject matter jurisdiction.  On a Rule 12(b)(1) motion to dismiss, "proof of jurisdictional facts may be supplied by affidavit, declaration, or any other evidence properly before the court in addition to the pleadings challenged by the motion."[6]

In the Order Granting Motion for Preliminary Injunction, the Court held that it "has subject matter jurisdiction to issue a preliminary injunction in this dispute between two U.S. corporations, including one that is applicable on the high seas."[7]  The Court indicated in that order that an explanation for the Court's subject matter determination would follow by separate order, which is set forth herein.

---

[4] *Id.* (citations omitted).

[5] *See* Fed. R. Civ. P. 62.1(a); *Sw. Marine*, 242 F.3d at 1166.

[6] *Green v. United States*, 630 F.3d 1245, 1248 n.3 (9th Cir. 2011*); see also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998) (discussing the distinction between dismissal for lack of subject matter jurisdiction and for the failure to state a claim and noting that "[d]ismissal for lack of 'subject-matter jurisdiction because of the inadequacy of the federal claims is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.") (citation and internal quotation marks omitted).

[7] Docket 111 at 2-3, n.7. The preliminary injunction order cited to the diversity jurisdiction statute, 28 U.S.C. § 1332, to the jurisdictional provision of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1), and to the Ninth Circuit's decision in *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1228 (9th Cir. 2013).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 2 of 30

Pursuant to 28 U.S.C. § 1332, a district court has jurisdiction over cases in which the parties are citizens of different states and the amount in controversy exceeds $75,000. Here the record indicates the requisite diversity of citizenship between the parties and amount in controversy and the Court therefore has subject matter jurisdiction based on diversity of citizenship.[8]

The Court also has federal question jurisdiction over this controversy under 28 U.S.C. § 1331 because this case arises out of, or in connection with, Shell's planned oil exploration and drilling operation on the Outer Continental Shelf. The jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA") provides in relevant part that "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf."[9] It is undisputed that Shell intends to conduct an exploratory drilling operation on the Outer Continental Shelf during the 2015 drilling season. This case, alleging tortious interference with those plans by Greenpeace USA, arises out of or in connection with Shell's planned operation, and

---

[8] *See* Docket 1 (Compl.); Docket 104 (Decl.).

[9] 43 U.S.C. § 1349(b)(1). While § 1349(b)(1) broadly confers federal jurisdiction upon the district courts "for all cases and controversies arising out of, or in connection with" any OCS operation "which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf," 43 U.S.C. § 1333 contains choice of law provisions that are dependent upon whether a fixed structure or artificial island has been erected on the OCS. *Cf. Shell Offshore, Inc. v. Greenpeace, Inc.,* 709 F.3d 1281, 1288 (9th Cir. 2013); *see also EP Operating Ltd. P'ship v. Placid Oil Co.,* 26 F. 3d 563, 568 (5th Cir. 1994) ("we find that the most consistent reading of the statute instructs that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333." (footnote omitted)); *see also In re Deepwater Horizon*, 745 F.3d 157, 162–65 (5th Cir. 2014).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 3 of 30

accordingly the OCSLA provides a separate basis for the Court's subject matter jurisdiction.[10]

A third basis for jurisdiction in this case is admiralty. The alleged torts have occurred and are anticipated to occur on navigable waters and would have a potentially disruptive impact on maritime commerce, as at least some component of Shell's planned activities bear a substantial relationship to traditional maritime activity.[11] But Greenpeace USA cites to *Marine Cooks and Stewards, AFL v. Panama S.S. Co.* for the proposition that a federal court sitting in admiralty in the Ninth Circuit does not have the authority to issue an injunction.[12] However, *Marine Cooks* predates the unification of admiralty and other civil actions that took place in 1966, and although the case appears not to have been expressly overruled, the Ninth Circuit has since that time repeatedly recognized the equitable authority of the district courts in admiralty.[13] Indeed, Rule F(3) of the

---

[10] *See EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 566–70 (5th Cir. 1994) (discussing § 1349(b)(1) jurisdiction and interpreting the term "operation" broadly to include the entire cycle of mineral development on the Outer Continental Shelf, and interpreting the phrase "arises out of, or in connection with" to encompass cases that "affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources").

[11] *See In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124 (9th Cir. 2009); *see also Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043 (5th Cir. 1990). The preliminary injunction in the 2012 case did not extend to the high seas, and the Ninth Circuit did not consider whether the district court had admiralty jurisdiction or the district court's ability to issue an injunction in admiralty; *see Shell Offshore, Inc. v Greenpeace, Inc.*, 709 F.3d 1281, 1288 (9th Cir. 2013).

[12] *See* 265 F.2d 780, 785 (9th Cir. 1959); *rev'd on other grounds*, 362 U.S. 365 (1960) ("This is an action for an injunction, and admiralty at no time has had jurisdiction of such actions.").

[13] *See, e.g.*, *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*, 725 F.3d 940 (9th Cir. 2013) (maintaining a preliminary injunction on the high seas previously ordered by the Circuit at 702 F.3d 573); *C.N.R. Atkin v. Smith*, 137 F.3d 1169, 1171–72 (9th Cir. 1998) ("It is true . . . that equity is part of the law of admiralty.") (citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 36 (1990) ("[C]ertainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy.")); *Key Bank of Washington v. S. Comfort*, 106 F.3d 1441, 1444 (9th Cir. 1997) ("A district court sitting in admiralty has equitable powers to do

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 4 of 30

Supplemental Rules for Admiralty or Maritime Claims, enacted in 1966, expressly authorizes the district court to enter certain injunctions.[14]  For the foregoing reasons, the Court finds that *Marine Cooks* does not preclude the Court from according injunctive relief in admiralty.

Moreover, as recognized by the Ninth Circuit, the Court's supplemental jurisdiction operates to fill any gap in the Court's subject matter jurisdiction where a common nucleus of operative facts underlies the action.[15]

Greenpeace USA maintains that even if there is subject matter jurisdiction within the United States' Exclusive Economic Zone ("EEZ") and within the nation's land and territorial waters, the Court "lacks subject matter jurisdiction over extraterritorial events between foreign-flagged vessels on the high seas."[16]

Greenpeace USA cites to *Kiobel v. Royal Dutch Petroleum Co.*, where the Supreme Court observed that it has generally treated the high seas the same as foreign

---

'substantial justice.'") (quoting *Mosher v. Tate*, 182 F.2d 475, 479 (9th Cir. 1950)). *See also Pino v. Protection Maritime Ins. Co., Ltd.*, 599 F.2d 10, 16 (1st Cir. 1979), *cert. denied* 444 U.S. 900 (1979) ("[C]ourts sitting in admiralty may award injunctive relief in accordance with Fed.R.Civ.P. 65 in situations where such relief would be appropriate on land."); *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Whatever may have been the extent of the equitable power of an admiralty court to issue injunctions prior to the 1966 unification of admiralty and other civil actions, there should be little doubt today that courts of admiralty, in proper cases, may invoke the equitable tool of injunction.").

[14] *See also Complaint of Paradise Holdings, Inc.*, 795 F. 2d 756 (9th Cir. 1986) ("an admiralty court is generally acknowledged to possess broad injunctive power to ensure the 'orderly and effective operation of the Limitation Act.'") (citations omitted).

[15] 28 U.S.C. § 1367(a)*; see Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1288 (9th Cir. 2013).

[16] Docket 99 (Motion) at 25.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 5 of 30

soil in applying the presumption against extraterritorial application of Acts of Congress.[17] *Kiobel* was an Alien Tort Statute case that "concerned the alleged complicity of foreign corporations with the Nigerian government for atrocities committed in Nigeria against Nigerian citizens, in violation of international norms."[18]  In *Kiobel,* the Supreme Court discussed the propriety of the extraterritorial application of Acts of Congress on the high seas.  Specifically, the Court recognized piracy as an exception to the presumption against the extraterritorial application of U.S. laws, observing that piracy is conduct that "typically occurs on the high seas, beyond the territorial jurisdiction of the United States or any other country."[19]  The Supreme Court cited with approval to an 18th century definition of piracy as "acts of robbery and depredation upon the high seas, which, if committed upon land, would have amounted to felony there."[20]  The Supreme Court opined that U.S. law could be imposed extraterritorially on pirates because doing so "does not typically impose the sovereign will of the United States onto conduct occurring within the territorial jurisdiction of another sovereign and therefore carries less direct foreign

---

[17] *Kiobel v. Royal Dutch Petroleum Co.*, -- U.S. --, 133 S. Ct. 1659 (2013).

[18] *Sachs v. Republic of Austria,* 737 F. 3d 584, 602 n.18 (9th Cir. 2013) (*cert. granted* 135 S. Ct. 1172 (2015)).

[19] *Kiobel*, 133 S. Ct. at 1667.

[20] *Id.* (citing 4 W. Blackstone, Commentaries on the Law of England 72 (1769)); *see also Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 943 (9th Cir. 2013) (relying on the United Nations Convention on the Law of the Sea Article 101 to define piracy as "illegal acts of violence or detention, or any act of depredation, committed for private ends by the crew of the passengers of a private ship . . . and directed . . . on the high seas, against another ship . . . or against persons or property on board such ship."); *see also* 18 U.S.C. § 1651 ("Whoever, on the high seas, commits the crime of piracy as defined by the law of nations, and is afterwards brought into or found in the United States, shall be imprisoned for life.").

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 6 of 30

policy consequences.  Pirates were fair game wherever found, by any nation, because they generally did not operate within any jurisdiction."[21]

Greenpeace USA maintains that "there is no merit to Shell's conclusory allegations that Greenpeace USA was involved in an act of piracy" so as to confer subject matter jurisdiction over it on the high seas.[22]  Instead, Greenpeace USA argues that the Court should apply the presumption against extraterritoriality and dismiss all of Shell's claims insofar as they apply to the high seas.

Shell's Complaint alleges that Greenpeace USA's and other Greenpeace entities' tactics include "blockading vessels in transit, blocking access to vessels attempting to dock at port, boarding vessels, placing swimmers in the water in front of vessels, hanging climbers on the sides of vessels, hanging survival pods on vessels, attempting to foul propulsion systems and chaining of individuals to anchors, vessels, or other facilities."[23] The Complaint alleges multiple acts by various Greenpeace entities throughout the world in support of its allegations, and alleges that Greenpeace USA is likely to engage in these same activities against Shell in the coming months.[24]  Shell adds, "Greenpeace has a well-established institutional reputation and history for extremist and reckless conduct involving human and marine blockades, and reckless boardings."[25]  And, contrary to

---

[21] 133 S. Ct. at 1667.

[22] Docket 99 (Motion) at 27.

[23] Docket 1 (Compl.) at 8 ¶ 23.

[24] *Id.* at 16 ¶ 32.

[25] *Id.* at 20 ¶ 45.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 7 of 30

Greenpeace USA's assertion, Shell is not seeking for this Court "to exercise jurisdiction over foreign-flagged vessels on the high seas."[26]  Rather, Shell seeks for this Court to exercise jurisdiction over United States corporations.

Shell's Complaint does not use the term "piracy" to describe the conduct of Greenpeace USA activists.  Rather, Shell has pled intentional tortious interference with maritime navigation, trespass and trespass to chattels, private nuisance, and civil conspiracy deriving from each of the other three claims.

Upon careful consideration, the Court finds that the presumption against extraterritoriality should not apply to Shell's claims against Greenpeace USA on the high seas.[27]  The Court finds that the alleged conduct in the Complaint, even if it is not piracy, is sufficiently akin to piracy so as to fall within that exception to the presumption against extraterritoriality, particularly when the extraterritorial scope of the Court's jurisdiction is extended only to the high seas.  In making this determination, the Court has considered that the parties are all United States corporations and that the threatened conduct that forms the basis of the Complaint relates directly to the development of the OCS resources within United States territory. As such, on these alleged facts, the Court finds that the claims touch and concern the territory of the United States with sufficient force so as to displace the presumption against extraterritorial application.[28]

---

[26] Docket 99 (Motion) at 25.

[27] The Court notes that what precisely constitutes the "high seas" varies depending on applicable statutory or jurisdictional question.  *See* 33 C.F.R. § 2.32 (defining "high seas" for the purposes of the Coast Guard's jurisdiction under various statutes and international conventions).

[28] *See generally Kiobel,* 133 S. Ct. at 1669 ("And even when the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 8 of 30

## II.    Ripeness

"Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of Article III of the federal Constitution.  Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1)."[29]

"Ripeness is peculiarly a question of timing" and "its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements."[30]   When evaluating the ripeness of a case addressing alleged future harm, a court considers "whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests."[31]   "[O]ne does not have to await consummation of threatened injury to obtain preventative relief.  If the injury is certainly impending, that is enough."[32]   "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending . . . allegations of *possible* future injury are not sufficient."[33]

---

[29] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (internal citations and quotation marks omitted).

[30] *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) (citations, quotation marks, and brackets omitted).

[31] *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Railway Mail Assn. v. Corsi*, 326 U.S. 88, 93 (1945)).

[32] *Id.* (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)).

[33] *Clapper v. Amnesty Int'l USA*, --- U.S. ---, 133 S. Ct. 1138, 1147 (2013) (internal citations and quotation marks omitted, emphasis in original).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 9 of 30

Greenpeace USA asserts that this case is not ripe because when it was filed the Department of the Interior had not yet issued all of the necessary permits for Shell's planned summer 2015 drilling operations.[34]  Those permits have now been issued.[35]  And even prior to their issuance, Shell's operation was already underway as it mobilized a fleet of vessels and prepared its equipment for use during the 2015 season.  Shell's Complaint alleges not only future harm but also contains multiple allegations of actions that Greenpeace USA and other Greenpeace entities have taken in the past, including the incident on the high seas that was ongoing when this case was filed.[36]  The Court therefore finds this case ripe for adjudication.

The Ninth Circuit addressed ripeness based on a similar record when reviewing this Court's 2012 preliminary injunction and concluded then that "the facts are sufficiently developed and the nature of the dispute warrants prompt adjudication."[37] The Circuit Court noted that Shell had presented "undisputed evidence that it [was] only authorized to explore these leases during the narrow open water season of July through October," and found that "to withhold a decision in such a context would work a serious hardship upon Shell."[38]  The facts here, three years later, are very much the same.

---

[34] Docket 99 (Motion) at 20.

[35] United States Department of Interior Letter of Approval, May 11, 2015, *available at* www.boem.gov/shell-chuchi (last visited June 8, 2015).

[36] Docket 1 (Compl.) at 16 ¶ 32, 17 ¶ 36, 19 ¶ 44.

[37] *Shell Offshore*, 709 F.3d at 1287 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

[38] *Shell Offshore*, 709 F.3d at 1287.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 10 of 30

## III. Displacement

Greenpeace asserts that Shell's federal common law maritime tort claims have been displaced by the Ports and Waterways Safety Act ("PWSA")[39] and OCSLA,[40] "both of which authorize the U.S. Coast Guard to issue the safety zones that Shell seeks from this Court and to prevent the trespasses that Shell alleges are likely to occur."[41] Displacement of federal common law occurs when Congress enacts legislation that had previously been governed by federal common law, thereby removing what the Supreme Court has described as "the need for such an unusual exercise of law-making by federal courts."[42] Greenpeace USA asserts that Shell's requested relief for security or safety zones from the Court is squarely within the scope of the Coast Guard's comprehensive authority such that Shell cannot obtain that same relief in this action.

Shell asserts that Greenpeace USA's displacement argument fails for three reasons. First, while it acknowledges that the Coast Guard has the discretion to establish security and safety zones to protect vessels "from destruction, loss, or injury from sabotage or other subversive acts," it maintains that authority does not displace Shell's right to pursue maritime tort claims resulting from those same acts.[43] Second, Shell asserts that because there is "no credible dispute that the specific federal torts pled by

---

[39] Pub. L. 92-340, 86 Stat. 424 (1972) (as amended) (codified at 33 U.S.C. § 1221 *et seq.*).

[40] Pub. L. 212, 67 Stat. 462 (1953) (as amended) (codified at 43 U.S.C. § 1331 *et seq.*).

[41] Docket 99 (Motion) at 11.

[42] *Am. Elec. Power Co., Inc. v. Connecticut*, -- U.S. --, 131 S. Ct. 2527, 2537 (2011) ("*AEP*") *(*citing *Milwaukee v. Illinois,* 451 U.S. 304, 314 (1981)).

[43] Docket 106 (Opp.) at 19 (quoting 33 C.F.R. § 165.30(b)).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 11 of 30

Shell . . . continue to exist in contemporary law as viable causes of action," the Court may accord injunctive relief in this action to prevent future tortious activity.[44]   Third, Shell asserts that the PWSA and OCSLA are not comprehensive statutes that occupy the field so as to displace federal maritime law.

The primary case that Greenpeace USA relies on in support of its displacement argument is *American Electric Power Co. v. Connecticut.*[45]   In *AEP*, eight states, New York City, and three land trusts brought a federal common law public nuisance claim against several electric power producers, seeking abatement of the defendants' greenhouse gas emissions.   The electric producers argued that the plaintiffs' public nuisance claim was precluded by the comprehensive legislation for the regulation of the emissions set out in the Clean Air Act.[46]   The Supreme Court held that "[t]he test for whether congressional legislation excludes the declaration of federal common law is simply whether the statute speaks directly to the question at issue."[47]   "The existence of laws generally applicable to the question is not sufficient; the applicability of displacement is an issue-specific inquiry."[48]   Applying this test, the Court reviewed the extensive provisions of the Clean Air Act applicable to the regulation of carbon-dioxide emissions, focusing on the broad policy-making, regulatory, and enforcement authority that the Act

---

[44] Docket 106 (Opp.) at 19–20.

[45] 131 S. Ct. 2527 (2011).  Greenpeace USA's Motion to Dismiss incorporated by reference its opposition to Shell's motion for a preliminary injunction at Docket 59.  *See* Docket 59 at 16–18.

[46] 42 U.S.C. § 7401 et seq.

[47] 131 S. Ct. at 2537 (citations, brackets, and internal quotation marks omitted).

[48] *Id.*

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 12 of 30

conferred on the EPA. Based on that review, the Supreme Court concluded that "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide emissions."[49] Central to the Court's determination that the federal public nuisance claim was displaced was that the statute itself "provides a means [for private citizens] to seek limits on emissions of carbon dioxide from domestic power plants—the same relief the plaintiffs seek by invoking federal common law. We see no room for a parallel track."[50] The Supreme Court also stressed the complexity of the task of regulating greenhouse gas emissions, the importance of that task to national policy, the benefits of an expert agency making the necessary determinations with full public input, and the possibility of inconsistent judgments if district judges were tasked with that responsibility.

Greenpeace USA also cites to the Ninth Circuit's decision in *Native Village of Kivalina v. ExxonMobil*. The question there was whether *AEP*'s holding extended to Kivalina's right to seek damages from numerous energy producers based on a federal common law claim of public nuisance. Kivalina acknowledged the Supreme Court's displacement determination in *AEP*, but argued that the holding should not extend to its claim for damages. But the Ninth Circuit disagreed, holding that "[i]f a federal common law cause of action has been extinguished by Congressional displacement, it would be incongruous to allow it to be revived in another form."[51]

---

[49] *Id.*

[50] *Id.*

[51] *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 857 (9th Cir. 2012).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 13 of 30

Yet, the Ninth Circuit also stressed in *Kivalina* that "*Congressional* action, not executive action, is the touchstone of displacement analysis."[52]  In the wake of *AEP*, the Ninth Circuit has held that "before applying federal common law, we must first interpret the statute and attempt to ascertain congressional intent to determine if Congress has decided the matter."[53]  In *Kivalina*, the Circuit defined the question as "whether Congress has provided a sufficient legislative solution to the particular [issue] to warrant a conclusion that [the] legislation has occupied the field to the exclusion of the common law."[54]

Based on the foregoing, it is the relevant statutes, and not the Coast Guard's subsequent safety and security zone regulations, that are the focus of the displacement analysis.  A review of the PWSA and OCSLA indicate that they do not speak directly to the question at issue here – the establishment of safety and security zones around private vessels.  Greenpeace USA cites the Congressional policy statement in the PWSA that "vessel safety" is a matter of "major national importance" such that "increased supervision of vessel and port operations is necessary."[55]  But the Court does not find that this statutory pronouncement demonstrates an intent to eliminate maritime tort claims. Similarly, Greenpeace USA cites to the OCSLA's authorization to the Coast Guard "to

---

[52] *Id.* at 858 (citing *AEP*, 131 S. Ct. at 2537) (emphasis added).

[53] *AmeriPride Service Inc. v. Texas E. Overseas Inc*, 782 F.3d 474, 485-86 (9th Cir. 2015).

[54] *Kivalina*, 696 F.3d at 856.

[55] 33 U.S.C. § 1221.  In its safety zone regulations, the Coast Guard has cited to 33 U.S.C. § 1231 for its authority to establish safety zones within the 12-mile U.S. territorial seas. *See, e.g.*, 33 C.F.R. § 165.T13-289 (establishing safety zones around Shell vessels in the Puget Sound).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 14 of 30

promulgate and enforce such reasonable regulations . . . relating to the promotion of safety of life and property on the artificial islands, installations, and other devices" on the OCS.[56] The Court does not find these statements to demonstrate an intent to occupy the field so as to preclude a parallel track of maritime tort claims. In short, Congress has not provided for a comprehensive legislative solution that displaces Shell's tort claims against Greenpeace USA. "The existence of laws generally applicable to the question is not sufficient."[57] Moreover, the OCSLA itself specifically provides for the applicability of civil and criminal laws to operations on the OCS.[58] Based on the foregoing, the Court concludes that the torts for intentional interference with navigation, trespass, and private nuisance have not been displaced by Congressional action in the PWSA or the OCSLA.

## IV. Preemption or Inapplicability of State Law

Greenpeace USA asserts that Shell cannot state any of its claims against Greenpeace USA under state law because federal maritime or statutory law applies to each claim.[59] Greenpeace USA asserts in the alternative that to the extent any state tort law might apply, the Supreme Court held in *United States v. Locke* that the PWSA preempts state law where "the Coast Guard has promulgated its own requirements on the subject or has decided that no such requirement should be imposed at all."[60]

---

[56] 43 U.S.C. § 1333(d); *see also* 33 C.F.R. § 147.15 (authorizing safety zones on the OCS not to exceed "a maximum distance of 500 meters around the OCS facility").

[57] *Kivalina*, 696 F.3d at 856.

[58] *See* 43 U.S.C. § 1333(a) and (b).

[59] Docket 99 (Motion) at 14.

[60] Docket 99 (Motion) at 14–15 (quoting *Locke*, 529 U.S. 89, 109–10 (2000)).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 15 of 30

Greenpeace USA maintains that since the Coast Guard has promulgated safety zones for Shell's vessels, Shell cannot obtain a safety zone from the district court by advancing a state tort claim. In *Locke*, the Supreme Court held that certain Washington State regulations regarding training, English proficiency, navigation watch, and casualty reporting requirements for oil tanker crews were preempted by federal law.[61] The Court in *Locke* stressed the need for a high degree of national uniformity in regulating on these topics.[62] But the Supreme Court also recognized that some state regulation of oil tankers might not be precluded, particular if a regulation was "justified by conditions unique to a particular port or waterway," or if it was of "limited extraterritorial effect" outside of the regulating state.[63] The Court added, "[l]ocal rules not pre-empted under . . . the PWSA pose a minimal risk of innocent noncompliance, do not affect vessel operations outside the jurisdiction, do not require adjustment of systemic aspects of the vessel, and do not impose a substantial burden on the vessel's operation within the local jurisdiction itself."[64] Here, the relief sought by Shell against Greenpeace USA does not have a risk of innocent noncompliance by others, would not affect any vessel's legitimate operations or systemic aspects, and would not impose a substantial burden on any vessel. Accordingly, the Court finds that the PWSA does not preempt the claims asserted by Shell.

---

[61] *Locke*, 529 U.S. at 112–16.

[62] *Id.* at 117.

[63] *Id.* at 112.

[64] *Id.*

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 16 of 30

Greenpeace USA also asserts that the authority of the Federal Aviation Administration preempts any state law claims predicated on aircraft safety.[65]  It is well established that federal law occupies the field with respect to aviation safety.[66]  And state law claims would not appear to be cognizable on the OCS pursuant to the OCSLA.[67]  Accordingly, any state law claims related to aviation safety on the OCS would be preempted by federal law, and the Court would grant this portion of the motion to dismiss as to any such state law claims on the OCS if the Court of Appeals remands for that purpose.[68]

## V.     Primary Jurisdiction

Greenpeace USA next asserts that the Court should dismiss Shell's claims pursuant to the doctrine of primary jurisdiction.  In *Astiana v. Hain Celestial Group, Inc.*, the Ninth Circuit recently set out the following guidance on primary jurisdiction.[69]  The Circuit described primary jurisdiction as

> a prudential doctrine that permits courts to determine that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the

---

[65] Docket 99 (Motion) at 15.

[66] *Montalvo v. Spirit Airlines*, 508 F.3d 464, 472 (9th Cir. 2007).  However, there is also considerable case law recognizing that the flight of an aircraft over another's land may amount to an actionable trespass or constitute a nuisance.  *See* 8A Am. Jur. Aviation § 3 and cases cited therein).

[67] *See* 43 U.S.C. §1333(a)(1) (OCS is an "area of exclusive Federal jurisdiction").  However, state law may nonetheless be applied as "surrogate" federal law on the OCS as specified in 43 § 1333(a)(2)(A).

[68] *See* Fed. R. Civ. P. 62.1(a)(3).

[69] 783 F.3d 753 (9th Cir. 2015).  In *Astiana*, the Ninth Circuit held that the district court erred when it dismissed the case based on primary jurisdiction rather than staying the proceedings while the parties (or the district court) sought guidance from the agency.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 17 of 30

agency with regulatory authority over the relevant industry rather than by the judicial branch. In evaluating primary jurisdiction, [the courts] consider (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather, the doctrine is reserved for a "limited set of circumstances" that requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency. . . .

. . .

[A] court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation. Similarly, primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make.[70]

Greenpeace USA argues this action should be dismissed because the Coast Guard's safety zones are sufficient, as they can be enforced by criminal and civil penalties. Shell responds that "[t]he fact that Greenpeace USA's actual and threatened actions would violate both civil and criminal laws is no grounds for dismissing this civil action."[71] Shell asserts that the exercise of the Court's equitable discretion does not require deferral to the Coast Guard.

---

[70] *Id.* at 760–61 (internal quotation marks and citations omitted).

[71] Docket 106 (Opp.) at 24.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 18 of 30

Upon consideration of the factors set forth in *Astiana,* the Court finds that dismissal of this case pursuant to the doctrine of primary jurisdiction is not warranted. The issues between Greenpeace USA and Shell extend from Puget Sound to the Chukchi Sea, and need prompt resolution. Although the Coast Guard has recently enacted regulations that establish temporary safety zones around Shell's contracted vessels in the territorial waters of the Puget Sound area, there is no evidence in the record that it will enact regulations that would cover the vessels' entire journey over the course of the 2015 summer drilling season.[72] In 2012, the Coast Guard indicated that it would only create safety zones within the 12 nautical mile territorial sea close to shore, and not in the EEZ or on the high seas, except for OCS operations.[73] On the OCS, the Coast Guard has stated that its authority extends only to 500 meters around OCS facilities, and only when the facilities are being constructed, maintained or operated on the OCS.[74] The Coast Guard has determined that its authority "does not permit establishment of safety zones for non-OCS facilities" on the OCS, nor does its authority extend to "include times where the OCS facility is in transit and not directly engaged in activity related to the exploration

---

[72] *See, e.g.*, Safety Zone and Regulated Navigation Area; 80 Fed Reg. 23445 (April 28, 2015).

[73] *See Safety Zone*; NOBLE DISCOVERER Outer Continental Shelf Drillship, Chukchi and/or Beaufort Seas, AK, 77 Fed. Reg. 38718, 38720 (June 29, 2012) (stating the Coast Guard would establish separate moving safety zones for the transit of the NOBLE DISCOVERER within the 12 nautical mile territorial sea).

[74] 33 C.F.R. § 147.10 (permitting safety zones to a maximum of 500 meters around OCS facilities when OCS facility is "being constructed, maintained, or operated on the Outer Continental Shelf"); *see also* Submission of the United States to the International Maritime Organization's Sub-Committee on the Safety of Navigation, June 4, 2010 ("The United States believes there is no demonstrated need for safety zones larger than 500 meters or the development of guidelines for such safety zones.").

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 19 of 30

or extraction of mineral resources."[75]  But the Court was persuaded by the evidence in the record that a larger safety zone applicable to Greenpeace USA that includes the vessels' entire journey is warranted.  For, as Greenpeace USA demonstrated earlier this year, at least one of its employees is willing to climb on to Shell's contracted vessels on the high seas and presumably elsewhere.[76]  The Court was also persuaded that a larger safety zone than 500 meters around the rigs while under tow and at the OCS is warranted as to Greenpeace USA, given the lack of maneuverability of the rigs and the complexity of the anchoring system that was testified to at the preliminary injunction hearing.  Moreover, evidence in the record demonstrates that the Coast Guard's resources in Alaska, and particularly in the Chukchi Sea, are quite limited.  And, since this case involves only these named parties, uniformity in administration is not a significant consideration.  The Court acknowledges the Coast Guard's expertise in the area of safety and security zones.  And yet, although the Court presumes that the agency is well aware of this litigation, it has not elected to participate in it.[77]  For the foregoing reasons, the Court will not dismiss this action on the basis of primary jurisdiction.

---

[75] *See Safety Zone*, *supra* note 72.

[76] The Court also observes that Greenpeace USA has suggested that in the absence of injunctive relief it might not stay within the Coast Guard safety zones.  Currently, the safety zone for moving vessels in Puget Sound is identical at 500 yards in the preliminary injunction and in the Coast Guard safety zone for that area.  And yet Greenpeace activist Mary Sweeters seeks to stay the preliminary injunction because Greenpeace USA is "in daily fear" of violating the preliminary injunction, while it "trusts the Coast Guard to exercise reasonable prosecutorial discretion."  *See* Docket 144-11 at 3.

[77] *Cf. Hener v. United States*, 525 F. Supp. 350 (S.D.N.Y. 1981) (Coast Guard joined with litigants in requesting the district court to determine the parties' rights in salvage dispute).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 20 of 30

## VI. *Forum Non Conveniens* and Comity

Greenpeace USA asserts that because the *Blue Marlin* and the *Esparanza* are Dutch-flagged and Dutch-owned vessels, the case should be dismissed to allow suit to be filed in Dutch courts so as to facilitate the application of Dutch law.[78] Greenpeace USA further asserts that Shell's Complaint should be dismissed under principles of international comity because the Dutch have the greatest interest in resolving the issues in this case.[79]

Shell responds that this case involves Greenpeace USA and two Shell entities, all of which are U.S. corporations, in a suit attempting to prevent Greenpeace USA from interfering with Shell's use of its U.S. Outer Continental Shelf leases. Consequently, Shell asserts that venue is appropriate in the United States. And Shell asserts that even if Dutch law might apply to Shell's claim for damages from Greenpeace USA stemming from the events that occurred earlier this year on the *Polar Pioneer*, Dutch law would not apply to the majority of this suit's subject matter—Shell's allegations regarding Greenpeace USA's stated intention to interfere now and throughout the summer with Shell's 2015 drilling program in the Chukchi Sea.[80]

The Court concurs with Shell's analysis of these issues, and for this reason dismissal will be denied on the venue and *forum non conveniens* grounds.

---

[78] Docket 99 (Motion) at 18–19 (citing *Lauritzen v. Larsen*, 345 U.S. 571 (1953)).

[79] Docket 99 (Motion) at 19.

[80] Docket 106 (Opp.) at 25–28.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 21 of 30

## VII. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of an action for failure to state a claim upon which relief can be granted. In ruling on such a motion, a court applies the "facial plausibility" pleading standard as analyzed by the Supreme Court in *Ashcroft v. Iqbal*.[81] Under that standard, to survive a Rule 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[82] This plausibility standard requires "more than a sheer possibility" of entitlement to relief, although it need not rise to the level of probability.[83] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.[84] But "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[85] Making such a determination is "a context-specific task that requires the . . . court to draw on its judicial experience and common sense."[86]

---

[81] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[82] *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[83] *Id.*

[84] *Id.* (citing *Twombly*, 550 U.S. at 555).

[85] *Iqbal*, 556 U.S. at 679.

[86] *Id.* (citation omitted).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 22 of 30

In 2012, when a Rule 12(b) motion was before the Court in these parties' previous dispute, the focus of the parties and the Court's decision was on the elements of the claims raised.[87]  Those elements are not the focus of Greenpeace USA's motion in this litigation.  Instead, Greenpeace USA has raised more nuanced issues as to the proper parties to raise the claims at issue and other specific issues within the context of these torts that are addressed below.

### a.  Trespass to Chattels

Greenpeace USA asserts that "Shell has failed to state a claim for trespass to chattels because it does not own or possess the chattels at issue."[88]  Greenpeace USA asserts that because the Complaint only alleges that the vessels are "under contract" to Shell, Shell may not maintain a trespass to chattels action regarding these vessels. Greenpeace USA relies on the Restatement of Torts for the proposition that only the "possessor" of a chattel may bring an action for trespass to chattels.[89]

Shell responds that it has adequately pled its possession of the vessels.  Shell's Complaint alleges that the certain vessels are each "contracted to Shell" for the 2015

---

[87] *See Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 845–46 (D. Alaska 2012).

[88] Docket 99 (Motion) at 21.

[89] Docket 99 (Motion) at 21 (citing Restatement (Second) of Torts § 218).  Greenpeace USA also cites to *Skane v. Star Valley Ranch Ass'n,* 826 P.2d 266, 260 (Wyo. 1992), a case in which the Wyoming Supreme Court held that an unsuccessful candidate for an elected position could not state a claim for trespass to chattels with respect to missing voting records; and *Synthes, Inc. v. Emerge Med., Inc.*, 2012 U.S. Dist. LEXIS 134886, at *126-27 (E.D. Pa. Sept. 19, 2012) (denying a motion to dismiss a trespass to chattels claim where defendants asserted that the property at issue was physically located at the facilities of Synthes's customers and interpreting Restatement § 216 cmts. c & d to mean "it is not necessary that one be in actual physical control of the property to be the 'possessor.'").

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 23 of 30

drilling season.[90]  Shell's Complaint also refers to the vessels as "owned or operated by or on behalf of Shell."[91]  And Shell alleges that Greenpeace USA's threatened conduct will damage or impede "Shell's possession, use, and operation of vessels and facilities."[92]  Based on these allegations, the Court finds that Shell has adequately pled its possession of the vessels so as to state a claim for trespass to chattels with respect to them when the vessels are under contract to Shell.[93]

Greenpeace USA next asserts that "Shell's trespass to chattels claim also fails under the doctrine of remoteness" and that "it is axiomatic that . . . one cannot sue for injuries that are merely derivative of an injury suffered by another person."[94]  Shell responds that the doctrine is inapplicable to a claim for trespass to chattels, as the Restatement specifically permits the attribution of possession to one who has the right to it.[95]  And Shell observes that Greenpeace USA has failed to cite any case in which the doctrine of remoteness has been applied to a trespass claim. Based upon the Court's review of the RICO and antitrust cases that Greenpeace USA cited in support of the

---

[90] Docket 1 (Compl.) at 7–8 ¶ 22.

[91] *Id.* at 24 ¶ 56.

[92] *Id.* at 25 ¶ 63.

[93] *See also* Restatement § 216 cmt. d.

[94] Docket 99 (Motion) at 21–22.

[95] Docket 106 (Opp.) at 32 (citing Restatement (Second) of Torts § 216 cmt. d).  Shell opines that the remoteness doctrine appears to be a "unique legal principle" with its applicability limited to RICO and antitrust claims, and specifically in tobacco litigation, based upon the cases cited by Greenpeace USA.  *See* Docket 106 (Opp.) at 33 n.99.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 24 of 30

applicability of this theory, the Court is not persuaded that the theory applies to Shell's claim for trespass to chattels.

Greenpeace USA also argues that dismissal of the trespass to land claim is warranted because Shell's allegations of threatened torts relate solely to vessels. But Shell's Complaint has adequately alleged Greenpeace USA's intention to trespass against both its vessels and facilities, and therefore states a sufficient claim for trespass to land.[96]

In the preliminary injunction order, the Court cited to the Restatement when determining that Shell had an adequate possessory interest in the vessels.[97] Case law also supports the adequacy of Shell's interest to maintain the trespass claim. For example, in *Great American Insurance Co. v. Nicholas*, the New Jersey district court granted summary judgment on a trespass to chattels claim where the insurance company had paid the vessels' owners after the defendant had set fire to one vessel and set several others adrift.[98] The Court held that "[o]ne who has a property interest in a chattel is in possession of it even if he is not exercising physical control over it at the time of the trespass."[99] Greenpeace USA asserts *Great American* is inapplicable because Shell

---

[96] Docket 106 (Opp.) at 33.

[97] Docket 111 at 6–7.

[98] 1989 WL 125350 (D. N.J. 1989).

[99] 1989 WL 125350 at *3 (citing Restatement (Second) of Torts §§ 217, 218 (1965)). *See also Armstrong v. Five Point Federal Credit Union*, 2007 WL 5011554 (Tex. App. 2008); *Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 935 (W.D. Ky. 2011) (secured creditor could maintain trespass action against third party because creditor could demand possession of chattel after a default).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 25 of 30

does not have an insurance subrogation claim to its contracted vessels.[100]  Admittedly, there is limited case law addressing a tort claim for trespassing onto contracted vessels. But based upon the Court's review of the Complaint, the Restatement and the limited case law on this topic, Shell has adequately pled that it has the requisite possessory interest in both the vessels and its leased facilities so as to maintain its trespass claims.

### b.  Interference with Navigation

Shell's Complaint also alleges a claim for Intentional Tortious Interference with Maritime Navigation.  The Complaint references the International Regulations for Preventing Collision at Sea, also known as the COLREGS,[101] as well as the Convention for the Suppression of Unlawful Acts Against the Safety of Maritime Navigation (the "SUA Convention").  Shell alleges that Greenpeace USA's past actions and its alleged planned future interference with Shell's contracted vessels in violation of these provisions "constitute unlawful obstruction or interference with maritime navigation" and "are a violation under admiralty and maritime law, and federal statutory law."[102]

Greenpeace USA asserts that Shell cannot maintain this cause of action because Shell "has not alleged that anyone from Shell was actually navigating the ships."

---

[100] Docket 138 (Reply) at 30.

[101] *See Crowley Marine Servs., Inc. v. Maritrans, Inc.*, 530 F.3d 1169, 1172 (9th Cir. 2008) (noting that the COLREGS have been adopted by all shipping nations and control the conduct of vessels at sea); *id.* at 1175 ("We are sensitive to the concern that the 'rules of the road' on the high seas must be clear, lest we create too much uncertainty in an area that requires a high degree of clarity. Our decision . . . should not encourage vessels to alter their understanding of the right-of-way; rather, we only reiterate that all ships must exercise requisite caution regardless of their statutory status.").

[102] Docket 1 (Compl.) at 23 -24.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 26 of 30

Greenpeace USA maintains "any alleged threated injuries to *navigation* are, by definition, suffered by those doing the navigating."[103]   Shell responds that Greenpeace USA's assertion that "Shell has no claim for intentional inference with vessels that are contracted by Shell, are directed by Shell, house Shell employees, and are solely engaged during the time periods described in the Complaint to carry out activities essential to Shell's 2015 Arctic program" is without merit.[104]

Shell has adequately alleged that Greenpeace USA and those acting in concert with it have and intend to violate the COLREGS and the SUA Convention with the intent to interfere with and delay Shell's contracted vessels.   Accordingly, the Court finds that Shell has stated a claim for intentional interference with navigation.   The Court does not find that such a claim can only be asserted by one who is actually navigating another vessel—a review of COLREGS and the SUA Convention shows that they are not focused on other navigators so much as all who use the ocean.[105]   Moreover, Shell has asserted that the alleged intentional interference with navigation would cause "irreparable and other financial injury to Shell, and place its employees, agents, and contractors at risk of serious injury."[106]

---

[103] Docket 99 (Motion) at 23 (emphasis in original).

[104] Docket 106 (Opp.) at 34.

[105] *See generally* Convention for the Suppression of Unlawful Acts against the Safety of Maritime Navigation, 1988; *id.* at preamble ("CONSIDERING that unlawful acts against the safety of maritime navigation jeopardize the safety of persons and property, seriously affect the operation of maritime services, and undermine the confidence of the people of the world in the safety of maritime navigation."); Convention on the International Regulations        for Preventing Collisions at Sea, 1972 (as amended).

[106] Docket 1 (Compl.) at 24.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 27 of 30

### c. Private Nuisance

Shell's third cause of action alleges that Greenpeace USA is creating "a substantial and unreasonable interference" with Shell's interest in its OCS leases that constitutes a private nuisance.[107]

Greenpeace USA asserts that Shell has failed to state a cause of action for private nuisance for several reasons. First, it asserts that Shell's allegation of a threatened future invasion of Shell's lease rights is too speculative: "Shell alleges a threatened invasion of its lease rights based merely upon allegations that the defendants trespassed to vessels thousands of miles away from the leaseholds and allegedly has threatened to do so again."[108] Similarly, Greenpeace USA asserts that "a threat relating solely to *vessels* cannot support a threat of a future nuisance pertaining to *land-based* property."[109] Greenpeace USA cites to *Adams v. Star Enterprise*, where the Fourth Circuit held that the plaintiff landowners had failed to state a claim of private nuisance against an oil distribution property under Virginia law, because the underground oil spill that prompted the litigation was "not visible or otherwise capable of physical detection from the plaintiff's property."[110] The Court does not find *Adams* to be analogous, as Shell has not pled conduct by Greenpeace USA that would not be visible to others—indeed, Shell alleges

---

[107] Docket 1 (Compl.) at 26.

[108] Docket 99 (Motion) at 24.

[109] Docket 99 (Motion) at 24 (emphasis in original).

[110] *Adams v. Star Enter.*, 51 F.3d 417, 423 (4th Cir. 1995).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 28 of 30

conduct by Greenpeace USA that is intended to be highly visible on its contracted vessels or other facilities.

Greenpeace USA also asserts that Shell has failed to allege an "unreasonable" interference with a private property right, because Greenpeace maintains that protesting on matters of public import should not be found to be unreasonable activity.[111] The Court rejects Greenpeace USA's assertion that any form of protesting is a *per se* reasonable interference with a private property right. Greenpeace USA cites to cases involving "peaceful protests, in full compliance with the guidance of local officials."[112] But here, Shell has alleged that Greenpeace USA's threatened acts are not peaceful legal protests; rather, it has alleged they are likely to include "hostile boarding and occupations of unsafe locations on vessels that impede operations, blockading vessels, blocking the path of vessels, positioning their own vessels and associated equipment and human divers at unsafe locations near the path of vessels and facilities or on vessels and facilities, or by engaging in other tortious and unlawful actions."[113] The Court finds that such alleged actions could well constitute unreasonable interference with private property rights.

Greenpeace USA also asserts that Shell's Complaint lists numerous prior protests involving Greenpeace USA or other Greenpeace entities, but that it "does not identify any particular protest by a Greenpeace entity that constituted a nuisance under the

---

[111] Docket 99 (Motion) at 24–25.

[112] Docket 99 at 24 (citing *Snyder v. Phelps* 131 S. Ct. 1207, 1220 (2011)).

[113] Docket 1 (Compl.) at 26–27.

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 29 of 30

Restatement or other law."[114]  However, Shell's Complaint does in fact identify specific protests that it alleges constituted a nuisance, including the allegation that Greenpeace USA "intentionally and knowingly obstruct[ed] and interfer[ed] with the free passage and operation of the . . . *Harvey Explorer*" [in 2010].[115]

Therefore, the Court concludes that Shell's allegations adequately state a claim for private nuisance.

### d. Civil Conspiracy

The parties appear to agree that Shell's civil conspiracy claim is derivative of the other three underlying torts that Shell has pled. Therefore, because the Court concludes that Shell has stated a cause of action on each of its other three claims, Greenpeace USA's motion to dismiss the civil conspiracy charge will likewise be denied.

### CONCLUSION

In light of the foregoing, IT IS ORDERED that the motion to dismiss at Docket 99 is DENIED.[116]

DATED this 12th day of June, 2015 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[114] Docket 99 (Motion) at 25.

[115] Docket 1 (Compl.) at 26; *see also id.* at 10 ¶ 28.

[116] However, as noted above in Section IV, if the Court of Appeals remands this case for this purpose, the Court would grant Greenpeace USA's motion to dismiss insofar as it seeks a ruling that state law is not applicable on the OCS, except as imported as surrogate law as provided for in 43 U.S.C. § 1333(a)(2)(A).

Case No. 3:15-cv-00054-SLG, *Shell Offshore Inc., et al. v. Greenpeace, Inc., et al.*
Order re Motion to Dismiss
Page 30 of 30